## MORRIS et al. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
May 4, 1928.

No. 7985.

**1. Intoxicating liquors ⬅248—Affidavit for search warrant to search private residence held wholly insufficient, and warrant issued thereon void.**

Affidavit for search warrant to search private residence, stating that National Prohibition Act (27 USCA) was being violated, by reason of fact that sworn affidavit had been presented to United States commissioner, stating liquors were being kept on certain premises, and that affiant believed and had good reason to believe that whisky was now kept in store on such premises, *held* wholly insufficient, and warrant issued thereon void.

**2. Intoxicating liquors ⬅249—Defendant, not in possession of premises searched for liquor, held not entitled to raise question of validity of warrant.**

Defendant, not having been in possession of premises on which liquor was found, and making no claim to premises or their possession, or to any of property seized *held* not entitled to raise question of validity of search warrant.

**3. Judges ⬅51 (4)—Trial judge was unauthorized to pass on good faith of defendant, filing affidavit of prejudice sufficient in form and accompanied by required certificate of good faith (Jud. Code, § 21 [28 USCA § 25]).**

Where affidavit filed pursuant to application to disqualify presiding judge on ground of personal prejudice, under Judicial Code, § 21 (28 USCA § 25), was sufficient in form and accompanied by required certificate of counsel as to good faith, it was not within province of trial judge to pass on good faith of defendant.

**4. Judges ⬅51 (2)—Defendant's application to disqualify judge, filed on day following securing additional information, held not untimely (Jud. Code, § 21 [28 USCA § 25]).**

Where defendant, filing affidavit and application to disqualify presiding judge on ground of personal prejudice, based on Judicial Code, § 21 (28 USCA § 25), had several times previously requested his counsel to prepare and file application for disqualification, but attorneys had disagreed with him, and thereafter, on day following his securing additional information relative to prejudice of judge, filed application for disqualification, it was not untimely.

In Error to the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

A. B. Morris and Paul Morris were convicted of possession of liquor and articles customarily used in manufacture thereof, and they bring error; suggestion of the death of Paul Morris being filed after argument and submission of case in appellate court. Reversed.

Wash E. Hudson, of Tulsa, Okl., for plaintiffs in error.

John M. Goldesberry, U. S. Atty., and W. B. Blair, Asst. U. S. Atty., both of Tulsa, Okl., and Harry Seaton, Asst. U. S. Atty., of Pryor, Okl.

Before LEWIS, Circuit Judge, and SCOTT and DAVIS, District Judges.

SCOTT, District Judge. A. B. Morris, Paul Morris, and Mont Morris, on January 26, 1927, were indicted by a grand jury for the Northern district of Oklahoma in two counts. The first count in substance charged the felonious possession of certain intoxicating liquor, and described "fourteen pints red corn whisky," and other liquors at 1318 North Union street, Lombard addition to the city of Tulsa, Osage county, state of Oklahoma; the place where "said liquor was had, kept, and possessed being in and upon Indian country," et cetera. The second count charged a violation of the National Prohibition Act (27 USCA), in that the defendants, at the same time and place mentioned in the first count, did unlawfully "have and possess one hundred empty pint bottles, two bottles of coloring and flavoring, one box of charcoal," and other articles customarily used in the manufacture of intoxicating liquor, and alleged to be "designed for use and intended for use in the manufacture of intoxicating liquor." The indictment was dismissed as to the defendant Mont Morris before the case was reached for trial. There was trial and conviction of the two other defendants, and they bring the case to this court upon writ

of error. Since the argument and submission of the case in this court, suggestion of the death of Paul Morris, duly supported, has been filed. We need, therefore, consider this appeal only as it affects A. B. Morris.

On July 19, 1927, two days before trial of the case was begun, the defendants jointly filed motion for permission to inspect the minutes of the grand jury; the motion reciting that the defendants verily believed that there was not any material or competent evidence submitted to said pretended grand jury. On the following day, July 20th, said defendants filed a motion to quash the indictment upon the ground that the evidence upon which said indictment was returned was unlawfully obtained by a search and seizure which was unauthorized in law, and further charging that the said grand jury had not been summoned or impaneled by or under the direction of any competent court with authority or jurisdiction in the premises. That said court had not been lawfully organized, and further reciting that Hon. F. E. Kennamer was appointed by the President of the United States of America as a United States District Judge for the Eastern District of Oklahoma, and that thereafter by Act of Congress of February 16, 1925, the Northern District of Oklahoma was created, and Congress in said act assigned Hon. F. E. Kennamer to act as judge of the newly created district; but as so assigned Hon. F. E. Kennamer is and was without authority to appoint a clerk for such district, or a jury commissioner, or any other officer provided for by statute, and therefore there was no panel of jurors from which to draw a grand jury, as provided by law. These motions were duly submitted and overruled, and such ruling is assigned as error. Without prolonging discussion of this phase of the case, we will say that it is our opinion that these motions were without merit and were properly overruled.

On July 20, 1927, defendants also filed a demurrer to the indictment and each count thereof. The demurrer was submitted and overruled, and error is assigned on such ruling. We think the ruling was correct.

On July 21, 1927, immediately before the calling of the case for trial, defendants filed a motion to quash the petit panel upon the same ground directed against the impaneled grand jurors. This motion was overruled, and correctly so.

And thereupon defendants filed a motion to suppress evidence. The motion to suppress evidence is based upon the alleged invalidity of the search warrant under which the search was made and the liquor found in the house in question. The application for the warrant is based upon an affidavit by Robert S. Hubbard, federal prohibition agent. In the affidavit affiant says "that the laws of the United States, namely, the National Prohibition Act, are being violated by reason of the facts, to wit: That a sworn affidavit has been presented to Wilson R. Roach, United States commissioner, stating that whisky and other intoxicating liquors are now being kept on the premises of A. B. Morris, located at 1318 North Union street, Lombard addition to Tulsa, in Osage county. Affiant believes and has good reason to believe that whisky is now kept and stored in and around the premises of A. B. Morris, being the premises of A. B. Morris, and being situate in the Lombard addition to Tulsa, in Osage county and state of Oklahoma.

The warrant recites: "Whereas, complaint on oath and in writing, supported by affidavit, * * * by R. S. Hubbard, alleging that the laws of the United States * * * are being violated by unlawfully storing and keeping whisky and other intoxicating liquors in and around the premises of A. B. Morris at his residence located at 1318 North Union street, Lombard addition to Tulsa, in Osage county; that an affidavit has been presented to Wilson R. Roach, a United States commissioner, et cetera, that whisky and other intoxicating liquors are now kept on said premises. Affiant believes and has good reason to believe that whisky and other intoxicating liquors are now kept on said premises. * * * *"

[1, 2] It is quite evident that the affidavit upon which the warrant issued was wholly insufficient and that the warrant was void. However, the case having been dismissed as to Mont Morris, and abated as to Paul Morris by reason of his death, and inasmuch as A. B. Morris does not appear to have been in possession of the premises at the time, he residing several miles distant, and inasmuch as he made no claim to the premises or their possession, or to any property seized, we think that he is not entitled to raise the question of the validity of the search warrant. Graham v. United States (C. C. A.) 15 F.(2d) 740; Cantrell v. United States (C. C. A.) 15 F.(2d) 953; United States v. Wexler (D. C.) 4 F.(2d) 391. Indeed, counsel for appellant does not seriously contend that the motion was good as to A. B. Morris. In the brief he says: "It might be argued that A. B. Morris, although he is silent in the record, not living on the premises searched, as the testimony upon the part of the government's

witnesses undoubtedly discloses, cannot raise the validity of the search. That, we concede, is the law relative to searches and seizures. We will deal with A. B. Morris' connection with the liquor hereinafter. But what about Paul Morris."

Counsel immediately before the case was called for trial on July 21, 1927, filed an application to disqualify Hon. F. E. Kennamer, the presiding judge, upon the ground of personal prejudice against the respective defendants and in favor of the United States. The application was supported by affidavits of each of the three defendants named in the indictment. The application to disqualify is based upon Judicial Code, § 21, now title 28, § 25, United States Code Annotated, and is supported by the affidavit of A. B. Morris. The application and affidavits were accompanied by a certificate of counsel of record that such application and affidavits are made in good faith. We here set out at large the affidavit of A. B. Morris, filed in support of the application:

"A. B. Morris, being first duly sworn, upon his oath deposes and says: That he is one of the defendants in the case of United States of America against A. B. Morris, Paul Morris, and Mont Morris, numbered 1589, now pending in the United States District Court for the Northern District of Oklahoma. That he verily believes and charges that his honor, Judge F. E. Kennamer, has a personal bias and prejudice against him and his codefendants, Paul Morris and Mont Morris, and each of them, and in favor of the government, by reason of which said judge is unable to impartially exercise its functions as judge in this cause. That by reason of said personal bias and prejudice neither of these defendants can have a fair and impartial trial before him. The grounds for the defendant's beliefs are as follows:

"The defendants state upon information and belief that Hon. F. E. Kennamer, in the city of Tulsa, Oklahoma, after the organization of the United States District Court for the Northern District of Oklahoma, created and organized pursuant to the act of Congress of February 16, 1925, made addresses before certain civic clubs and churches of that city on the subject of law enforcement; that in all these addresses he told his audiences in substance, and through them the general public, that he intended to bear down with heavy hands on all offenders against federal criminal laws; and that during the course of his address before one of said clubs, namely, the Kiwanis club, on or about the 13th day of April, 1925, he stated that, the

higher the law violator's collar and the whiter his shirt, the longer his sentence would be in his court, and that, the longer his list of witnesses, the heavier his sentence would be.

"That he has been informed that Hon. F. E. Kennamer, judge of said court, has heretofore expressed a willingness to assist the prohibition officers in apprehending this affiant in the commission of a violation of the liquor law, by permitting prisoners of the United States government to be used as under cover men for the purpose of obtaining evidence against this affiant, and this affiant has been further informed that the said Hon. F. E. Kennamer, judge of said court, did, at least upon one occasion, permit a prisoner of the United States government to be placed in the custody of prohibition officers, for the purpose of using said prisoner in the obtaining of evidence against this affiant.

"Affiant further states that heretofore, on or about the 10th day of March, 1926, he was tried before said court upon a charge of violating the intoxicating liquor laws, and was in said cause acquitted; but that, during the progress of the trial, one of the state's witnesses testified to a state of facts which the district attorney contended were contradictory to sworn written statements, furnished by said witness to the district attorney; and that over the objections of the attorney for this affiant, his honor, F. E. Kennamer, judge of said court, permitted the district attorney to conduct a rigid cross-examination of the state's own witness. And Hon. F. E. Kennamer, judge of said court, did at that time and in open court, state in substance that the witness had been tampered with, and from his demeanor cast reflection upon this affiant, and caused this affiant and his friends to believe that Hon. F. E. Kennamer believed that this affiant had in some manner stifled the testimony of said witness. And the court did at that time, in the presence of the jury, order the witness held for perjury, and did instruct the district attorney to file perjury charges against the witness, that it was apparent from the testimony that the witness had been tampered with by some one.

"Affiant further states that he had prior to the trial, and during the trial did, conduct himself properly, and was without fault in the premises, and did not have anything to do with said witness whatsoever.

"Affiant further states that his son, Mont Morris, one of the defendants named in the indictment with this affiant, was tried before his honor, F. E. Kennamer, judge of said court, and that on the 13th day of March,

1926, in the case of United States against Mont Morris, No. 842 in said court, passed sentence upon the said Mont Morris, and while passing said sentence the court stated in substance, as this affiant is informed and believes, as follows: 'The Morris tribe seem to believe that they have the privilege as a matter of right to sell whisky; but it has got to stop in the Northern district, if I can prevent it.'

"Affiant further states that he is informed that Hon. F. E. Kennamer further stated, or commented upon the fact, that this affiant, father of Mont Morris, had been tried before him, and that an uncle of the said Mont Morris had been tried and convicted before him.

"Affiant further states that he is informed that Hon. F. E. Kennamer, judge of said court, in his instructions to a grand jury, in the city of Tulsa, in said Northern district, on the 26th day of January, 1926, stated as follows:

" 'The people of the United States, by adopting the Eighteenth Amendment to the Constitution and the enactment of various laws known as prohibitory laws, have made it a crime to manufacture, sell, barter, possess, or give away intoxicating liquor in this country, and a violation of these laws by any one is a proper subject for your investigation.'

" 'In this connection, gentlemen, I want to say to you that I find and observe in some communities and localities that there is a certain class of people who have no honest occupation of any kind. Their only occupation is that of violating the laws of the country with respect to the prohibitory laws. In other words, they make a living by plying their trade of violating the prohibitory laws in the community in which they live. It is my observation that such a citizen is a menace to good society and decent government. You should investigate such characters.'

" 'In this jurisdiction the law is different than that in many states. Penalties are heavier for that character of man who constantly violates the law, and he should be indicted under the federal statute which makes it an offense to manufacture, sell, barter, possess, or give away intoxicating liquor in what was formerly known as Indian country. You should not hesitate, where the evidence shows this kind of practice is being engaged in, to indict any one who is guilty of violating the law in that respect.'

" 'Professional bootleggers, car thieves, and dope peddlers are a menace to good society. You should fully investigate such crimes, and where the evidence justifies it return an indictment.'

"Affiant further states that on the 20th day of July, 1927, this affiant obtained an affidavit of one Joe Irvin, which supports the statements made by this affiant herein upon information and belief, as to the fact that his honor, F. E. Kennamer, had interested himself in obtaining evidence against this affiant, which affidavit is hereto attached, to this application herein.

"Affiant further states that on the 20th day of July, 1927, this affiant was informed, and verily believes it to be true, that, while Department of Justice agents were making investigations in Tulsa, Oklahoma, the said F. E. Kennamer reported to such agents that one of the deputies United States marshal had used Snake Morris, one of the worst bootleggers in the country, as a guard while transferring prisoners.

"Affiant further states that on several occasions that he has requested his attorneys to prepare and file application to disqualify his honor, F. E. Kennamer, from trying this affiant or either of his sons, Mont and Paul Morris, but that his said attorneys have disagreed with this affiant, until the 20th day of July, 1927, when this affiant received new information, which was imparted to attorneys for this affiant and hereinabove last set out. That said information could not have been obtained at an earlier date, as it was not known to any of the parties defendant that the same existed until this affiant was so informed as above stated.

"Affiant further states that he verily believes that the said Hon. F. E. Kennamer has impressions or prejudices in his mind and against this defendant, and against his family, including his codefendants, sons of this affiant, which it would take evidence to remove, and that he cannot have a fair and impartial trial before Hon. F. E. Kennamer, judge of said court, and that he is entitled to have a trial before another United States judge. A. B. Morris.

"Subscribed and sworn to before me this 21st day of July, 1927.

"Helen Rabun, Notary Public. [Seal.]

"My commission expires July 11, 1928."

The affidavit by Joe Irvin, referred to in the A. B. Morris affidavit, is as follows:

"Joe Irvin, being first duly sworn, upon his oath deposes and says that he knows A. B. Morris, one of the defendants in the case of United States against A. B. Morris, Paul Morris, and Mont Morris, now pending in the United States District Court for the Northern District of Oklahoma.

"Affiant further states: That heretofore he was a prisoner in the United States fed-

eral Penitentiary at Leavenworth, Kansas, and that he was released from said institution on the 20th day of February, 1926. That a short time before his release from said institution he was in conversation with one Charley Chimes or Kimes; the exact manner of spelling said name is to this affiant unknown. That during said conversation the said Charley Chimes stated in substance that he had been arrested by the United States marshal or one of his deputies, and that with the consent of Judge Kennamer, the United States Judge at Tulsa, he was released with two United States officers for the purpose of purchasing whisky from Snake Morris, whose real name is A. B. Morris.

"Affiant further states that this same conversation was related by the said Charley Chimes to one Late Lewellen, now deceased. Affiant further states that recently he has been in and out of town, so that it would be hard for any one to get in touch with him, and that the first time that affiant related this conversation to Mr. Lewis J. Bicking, attorney for A. B. Morris, was on the morning of the 20th day of July, 1927.

"Joe Irvin.

"Subscribed and sworn to before me this 20th day of July, 1927.

"Helen Rabun, Notary Public.    [Seal.]

"My commission expires July 11, 1928."

In presenting the application for disqualification of the trial judge, the following proceedings and colloquy was had:

"Mr. Bicking: I wish to file an affidavit of personal bias and prejudice of your honor.

"The Court: What are you offering that in, in this case?

"Mr. Bicking: Yes, sir; I want it considered in this case.

"The Court: All right.

"(Thereupon Mr. Bicking read to the court the affidavit referred to.)

"The Court: What is the other affidavit you say you have there?

"Mr. Bicking: The affidavit attached here?

"The Court: Yes.

"(Thereupon Mr. Bicking read the affidavit of Joe Irvin attached to the affidavit of personal bias and prejudice to the court.)

"The Court: Now, is that all of them?

"Mr. Bicking: That is all, except the affidavit of Paul Morris.

"The Court: What is his affidavit?

"Mr. Bicking: Merely that this statement was made in open court at the trial, at the time the court made the statement about the Morris family, and that he is a son of A. B. Morris and a brother of Mont Morris and a member of the Morris family.

"The Court: All right; you may file it.

"The Court: It being and appearing to the court that the matters set out in the application have been within the knowledge of the defendants and their counsel for many weeks prior to this date, the date these cases come on for trial, that the applications are not made in good faith, but for the purpose of causing delay in the trial of these cases, and for that reason they will be denied.

"Mr. Bicking: Note our exceptions to the ruling of the court, and let us file at this time our motion to have the making and filing of the affidavit of personal bias and prejudice entered in the record of the court, and a certified copy certified to the Senior Judge of the Circuit Court of Appeals of the Eighth Circuit.

"The Court: What is the plea in case No. 1,524?

"Mr. Bicking: Not guilty.

"The Court: And in case No. 1,589?

"Mr. Bicking: If the court please, we have on file in this case a motion to inspect the minutes of the grand jury and also a motion to suppress.

"The Court: What is the first motion?

"Mr. Bicking: To inspect the minutes of the grand jury, for the reason that the only evidence presented to the grand jury—

"The Court: Your motion to inspect the minutes of the grand jury will be denied. If you have any motion to challenge the sufficiency of the indictment, I will hear it.

"Mr. Bicking: Give us an exception.

"The Court: You have had ample time to have presented all of these motions many days before to-day."

Later in the day a formal order was enrolled, and so far as it relates to the application to disqualify the trial judge is as follows:

"Application to disqualify judge is heard and denied, and exceptions allowed, and motion to certify disqualification is denied, and exceptions allowed."

From the foregoing it appears that the application was heard, read, and permitted to be filed, and was not stricken from the record. It further appears that the application was disposed of upon the grounds, first, that it was not made timely; and, second, that it was not made in good faith.

Judicial Code, § 21 (United States Code Annotated, tit. 28, § 25), is as follows:

"Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite par-

ty to the suit, such judge shall proceed no further therein, but another judge shall be designated in the manner prescribed in section 24 of this title, or chosen in the manner prescribed in section 27 of this title, to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one such affidavit; and no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. The same proceedings shall be had when the presiding judge shall file with the clerk of the court a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action."

[3] Upon examination of this section of the statute and of the decisions construing the same, we are constrained to the opinion that it was not within the province of the trial judge to pass upon the good faith of the defendant, the affidavit being sufficient in form and accompanied by the required certificate of counsel as to good faith. Berger v. United States, 255 U. S. 22, 41 S. Ct. 230, 65 L. Ed. 481; Henry v. Speer (C. C. A.) 201 F. 869; Saunders v. Piggly Wiggly Corporation (D. C.) 1 F.(2d) 582; Chafin v. United States (C. C. A.) 5 F.(2d) 592, certiorari denied 269 U. S. 552, 46 S. Ct. 18, 70 L. Ed. 407; Lewis v. United States, 14 F.(2d) 369 (C. C. A. Okl. 1926); Nations v. United States (C. C. A.) 14 F.(2d) 507, certiorari denied 273 U. S. 735, 47 S. Ct. 243, 71 L. Ed. 866; Benedict v. Seiberling (D. C.) 17 F.(2d) 831; Bishop v. United States (C. C. A.) 16 F.(2d) 410; Craven v. United States (C. C. A.) 22 F.(2d) 605.

Aside from the question of good faith, was the application and affidavit timely? From the affidavit it appears that much of the matter and many of the facts recited were within the knowledge of the defendant, A. B. Morris, for a considerable time before the day of trial. The affidavit recites that on several occasions defendant requested his attorneys to prepare and file application to dis-

26 F.(2d)—29

qualify the trial judge, but that his attorneys disagreed with him (and it is inferable that defendant yielded to his counsel) until the 20th day of July, 1927, when affiant received new information which was imparted to his attorneys. The affidavit further recites that on the 20th day of July, 1927, affiant obtained an affidavit of one Joe Irvin, which supports the statements made by affiant upon information and belief, as to the fact that his honor, F. E. Kennamer, had interested himself in obtaining evidence against the affiant, and that on the 20th day of July, 1927, affiant was informed, and verily believes it to be true, that while Department of Justice agents were making investigations in Tulsa, Oklahoma, the said F. E. Kennamer reported to such agents that one of the deputies United States marshal had used Snake Morris, one of the worst bootleggers in the country, as a guard while transferring prisoners. The affidavit further recites that said information could not have been obtained at an earlier date, as it was not known to any of the parties defendant that the same existed until this affiant was so informed as above stated.

[4] Assuming that until the 20th day of July, 1927, defendant in the face of the persuasion of his counsel was hesitant or in doubt, we think we cannot say as a matter of law that the additional alleged information was not calculated to confirm a doubtful belief upon the subject, and if it was sufficient and did have that effect, defendant could not well have acted more promptly in preparing his application and affidavits and filing the same than the following morning. In these circumstances we are of opinion that the application should not have been held untimely. In the light of the authorities cited, we think the trial court erred in assuming to pass upon the good faith of defendant, and in the circumstances the application was timely.

In view of the conclusion we have reached upon the application for disqualification, it follows that the case must be reversed and remanded for further proceedings in conformity herewith, and for a new trial. The assignment as to the sufficiency of the evidence need not be here considered, as it may be materially different upon a second trial.

Reversed.