## McNEAR v. UNITED STATES.
### No. 621.

Circuit Court of Appeals, Tenth Circuit.
July 27, 1932.

Walter W. Calvin, of Kansas City, Mo. (Charles S. Walden, of Kansas City, Mo., on the brief), for appellant.

L. E. Wyman, Asst. U. S. Atty., of Topeka, Kan.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

COTTERAL, Circuit Judge. ·

This appeal is from convictions under two indictments which charge T. W. McNear, appellant here, with violations of section 338, title 18, U. S. Code (18 USCA § 338) (section 215, Criminal Code). The appellant complains of error in overruling demurrers to the indictments, admitting evidence, and denying motions for directed verdicts.

The indictment numbered 721 charges that in the early fall of 1925, the defendant devised a scheme to defraud Duke Coulter and his wife, by representing he would sell and deliver to Coulter title to twenty acres of land in Hidalgo county, Tex., for $7,080, and by contract he obtained as the consideration therefor their note in that sum and a mortgage securing it on certain land in Greenwood county, Kan., converted the proceeds thereof to his own use, failed and refused to deliver such title, and intended never to deliver anything of value for the note and mortgage, but to defraud them out of said money, and for the purpose of executing the scheme caused to be delivered to Duke Coulter, at Eureka, Kan., a letter dated March 17, 1926, as follows: "The possible damage of frost is over now in the Valley, and I will see that your trees are planted without any further delay. Had hoped to be in Eureka before this, but have been tied up in Valley business. However, I assure you your interests will be taken care of."

The indictment numbered 723 charges a like scheme was devised by defendant on or about December 3, 1925, to defraud William T. Groves out of $7,000, to whom the defendant contracted to sell and deliver the title to twenty acres of land in the same county, for a consideration of notes and securities in that sum, the defendant converted them to his own use, and failed and refused to deliver such title, with the intention never to deliver anything of value under the contract, and for the purpose of executing the scheme, caused to be delivered through the mail to Gordon A. Badger, at Eureka, Kan., a letter dated September 8, 1926, as follows:

"In answer to your wire, will state I heard from Frank Gregory Saturday evening. He did not mention if Coulters land was sold, but stated he had shown young Coulter a more desirable piece closer in, which was satisfactory to him. If this is the case, can see no reason why it is not satisfactory to Coulters. Please advise as soon as Coulters have heard from their son.

"Regarding Dr. Grove's land which is not due Dr. according to contract at this time. Wish to state Gregory stated in his wire that he had protected the same for me.

"As soon as I hear from you to the effect that Coulters agree to the switch, I will make arrangement for the immediate delivery of title papers. I trust this will be satisfactory, as any other settlement, would prove embarrassing if not almost impossible at this time."

The demurrers to the indictments were not well founded. They were not open to the objection asserted, that the offenses were not charged with sufficient particularity. The two elements of the offenses, consisting of schemes to defraud and the use of the mails for the purpose of executing them, were set out with such clearness as to enable the defendant to prepare for trial and plead former jeopardy in a later prosecution. The demurrers were properly overruled. 6 Ency. U. S. Sup. Ct. Rep. 974; Havener v. United States (C. C. A.) 49 F.(2d) 196; Butler v. United States (C. C. A.) 53 F.(2d) 800.

We pass the assignments relative to the admission of evidence, as our views on the motions for directed verdicts suffice for a disposition of the appeal favorably to appellant. The motions were based on the insufficiency of the evidence, and it is necessary briefly to review it.

Duke Coulter and his wife resided at Eureka, Kan. In September, 1925, they joined an excursion party to Texas, promoted by the defendant, and they met him en route. Near Edinburg, he showed them a tract of twenty acres, which he said he was selling for the Stewart receivership. He recommended the land for fruit growing. On September 23, 1925, while on their return trip, they executed a written contract with him to purchase the land for a consideration of their two notes for $250 and $3,250, payable later, when he was to deliver a deed and abstract.

On October 5, 1925, before the first note became due, he called at their home and they entered into a new contract whereby they gave him a note for $7,080 and a second mortgage securing it on land they owned in Kansas, the consideration for which was the land, the planting of seventeen acres thereof in fruit, the surrender of the prior notes, and a commission on the sale. He sold the note to C. B. Cox forty days after its date and the Coulters paid it. Mrs. Coulter obtained from the mail box at Eureka, Kan., the letter exhibited in the first indictment, two days after its date. She testified the letter bore defendant's signature.

Meantime, she wrote the defendant to furnish the deed or return their money. On August 11, 1926, McNear wired his brother-in-law, Frank Gregory, at McAllen, Tex., to procure the title to the property from R. A. Rowland. The Coulters visited the land, built a home on it, and cleared some of it. No fruit was even ever planted there. They left, on discovering the land had been sold to another party. After their return, they went with their attorney to Kansas City to get a meeting with the defendant, but failed. The defendant has never delivered a deed for the Texas land. The Coulters lost $7,080 in the transaction.

R. A. Rowland was trustee for the creditors of the Stewart Farm Loan Company, which owned the land. In 1925 and 1926 he had charge of their sales. The defendant had no title to any of the lands or authority to sell them.

William T. Groves was a physician at Eureka, Kan. The defendant solicited him to buy land in the Rio Grande Valley, and selected a twenty acre tract there for him. They entered into a contract of purchase, of date December 3, 1925, for which he gave the defendant on that date a note for $1,500 and a deed for land he owned in Oklahoma, worth $3,500. His contract was otherwise the same as the Coulter contract. He paid his note which had been discounted at a bank. He never received any title to the Texas land, or other consideration for his note and his Oklahoma land.

He visited the land in Texas and cleared some of it. When he found he did not have any title to it, he returned to Eureka. Later, he went with his attorney to Kansas City and made an unsuccessful effort to get in touch with the defendant.

The secretary employed in the office of Attorney Badger testified to the receipt from the mail of defendant's letter set out in the indictment. On September 7, 1926, she typed and sent a telegram from Badger to the defendant, stating that the Texas land was in the Stewart receivership, and suggesting that the defendant secure the title and make good his contract with Groves. The letter referred to was an answer to the telegram. She identified two other letters sent by Badger to defendant, in September, 1926, seeking to obtain title to the land.

The defendant introduced no testimony at the trial.

█ It is contended there was no sufficient evidence of the mailing of the letters set out in the indictments. Mrs. Coulter testified she obtained the letter of March 17, 1926, from the mail box and the letter was signed by the defendant. The inference was justified the mailing was done by the defendant. Stokes v. United States, 157 U. S. 187, 15 S. Ct. 617, 39 L. Ed. 667. The letter to Groves is questioned for want of proof of its execution and mailing. But the letter was an answer to Badger's telegram of September 7, 1926. There were other dealings between the parties. It was competent to show the mailing of the letter by circumstantial evidence. Havener v. United States, supra. Another objection to that letter was that it was sent to Mr. Badger. But the statute does not require the mailing of a letter to the victim. It is enough if it be mailed to another, in furtherance of the scheme. Freeman v. United States (C. C. A.) 244 F. 1; Stewart v. United States (C. C. A.) 300 F. 769.

█ But there was a fatal want of evidence in this case, as the alleged scheme to defraud had been fully executed when defendant's letters were mailed. That scheme was to defraud the victims out of the considerations they rendered for the Texas land, by not delivering or intending to deliver therefor the agreed title or anything else of value. When the defendant obtained the considerations, no other fact was requisite to the scheme but the fraudulent intention.

According to the first indictment, when the defendant took the note for $7,080 on October 5, 1925, the fraudulent scheme was fully consummated. But the letter to Coulter was not mailed until March 17, 1926, and could not then have been sent for the purpose of executing the scheme. Under the second indictment, the like scheme was completed when the defendant obtained the note and the Oklahoma land under the contract, on December 3, 1925. But the letter of September 8, 1926, written long afterward, was unavailing therefore to aid in the execution of the scheme. For this reason, the use of the mails by the defendant was not in either case violative of the statute. United States v. Dale (D. C.) 230 F. 750; Stewart v. United States (C. C. A.) 300 F. 769; Barnes v. United States (C. C. A.) 25 F.(2d) 61.

█ This case is clearly distinguishable from those where letters are written while a scheme is still in progress to influence payments by patrons. Stewart v. United States (C. C. A.) 300 F. 769 is an illustration in which the collection of lien notes was solicited by mail, as a part of the alleged scheme. A letter is violative of the statute, if its tendency is to

lull the recipient into a false sense of security, as a means of inducing or encouraging him to make further payments as contributions to a fraudulent scheme. Newingham v. United States (C. C. A.) 4 F.(2d) 490; Lewis v. United States (C. C. A.) 38 F.(2d) 406. The instant case differs essentially in that the scheme charged was no longer on foot and the spoils had been fully realized when the letters were sent through the mails.

The motions to direct verdicts for the defendant were therefore well founded and should have been sustained. For the error in overruling them, the judgments are reversed and the case is remanded to the District Court with direction to grant appellant a new trial in both cases.

Reversed.