**MERRILL et al. v. UNITED STATES.**
**No. 8461.**

Circuit Court of Appeals, Ninth Circuit.
March 4, 1938.

As Amended March 22, 1938.

Rockwood Brown and Horace S. Davis, both of Billings, Mont., and Henry D. Moyle, of Salt Lake City, Utah, for appellants.

John B. Tansil, U. S. Atty., and R. Lewis Brown, Asst. U. S. Atty., both of Butte, Mont.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellants were indicted, tried, convicted, and sentenced for violating section 215 of the Criminal Code, 18 U.S.C.A. § 338. They appealed. We reversed the judgment of conviction, but, on appellee's petition, granted a rehearing. That has been had. The question is whether the evidence was sufficient to warrant submission of the case to the jury.

The indictment is in ten counts. Count 1 alleges that appellants devised a scheme to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises. As described in count 1, this was a scheme to sell stock of Merrill Mortuaries, Inc., a corporation, hereafter called Mortuaries, and to obtain payment therefor, by making false and fraudulent pretenses, representations, and promises to the purchasers thereof. Count 1 further alleges that, having devised this scheme, appellants, for the purpose of executing it, did on April 25,

1932, knowingly cause to be delivered by mail, according to the direction thereon, a letter directed to W. A. Bestwick at Alberton, Montana, the contents of which are set out in count 1.

Except as to form and contents of letters, names and addresses of persons to whom they were delivered, and dates and places of delivery, the other counts are similar to count 1. All the indictment letters are alleged to have been delivered in Montana.

There was no direct proof of the fraudulent scheme described in the indictment. That is to say, there was no direct evidence that appellants schemed to sell Mortuaries stock by making false or fraudulent pretenses, representations, or promises to the purchasers thereof.[1] There was, however, some evidence that appellants made some such sales by such means. The fact that they made such sales was a circumstance tending to prove that they had schemed to make them. There was no other proof of the fraudulent scheme.

■ There was no evidence that the scheme continued after the stock sales ceased. The latest stock sale shown by the evidence was made on September 3, 1931. The earliest of the indictment letters was written on April 18, 1932, and delivered on April 21, 1932. There being no evidence that the scheme then existed, it obviously cannot be said that the letters were delivered for the purpose of executing the scheme. Compare McNear v. United States, 10 Cir., 60 F.2d 861, 863; Little v. United States, 10 Cir., 73 F.2d 861, 867, 96 A.L.R. 889. Stewart v. United States, 8 Cir., 119 F. 89, 95.

■ The fact that Mortuaries was still in existence, was still carrying on its mortuary business, and was still dominated and controlled by appellants, does not prove or tend to prove that the fraudulent scheme[2] described in the indictment existed after September 3, 1931.

■ One indictment letter was to Pat R. Gagner, manager of an establishment operated by Mortuaries, or a subsidiary thereof, at Butte, Montana. Accompanying it was a certificate for one share of Mortuaries stock which had been issued to John Skola in September, 1929, and had been repurchased by Mortuaries in April, 1932. The letter instructed Gagner that when some Mortuaries customer came to pay for a funeral service he (Gagner) should "sell" the Skola stock to such customer for $100, then take it back, credit the customer's account with $100, and return the stock to Mortuaries for cancellation, thus making it appear that Mortuaries had received the stock in part payment of a funeral bill, instead of having repurchased it, as in fact it had, from a dissatisfied stockholder.

Gagner did not carry out these instructions. Even if he had done so, the transaction would have been an obvious sham, not an actual sale. Even if regarded as a sale, it would not have been a fraudulent sale, or a sale made by means of false or fraudulent pretenses, representations, or promises, and would, therefore, not have been such a sale as was contemplated in the fraudulent scheme described in the indictment. There is consequently, no merit in appellee's contention that the Gagner letter was delivered or caused to be delivered for the purpose of executing that scheme.

■ Some of the indictment letters were addressed to holders of Mortuaries stock who had complained of the nonpayment of dividends thereon. The letters purported to explain and justify such nonpayment, their evident purpose being to allay the discontent of such stockholders and to restore their confidence in the stock. Appellee contends that these were "lulling" letters, the delivery of which comes within the condemnation of the statute, citing in support of this contention Lewis v. United States, 9 Cir., 38 F.2d 406; Brady v. United States, 9 Cir., 26 F.2d 400; Newingham v. United States, 3 Cir., 4 F.2d 490. These cases are not in point. In each of them the fraudulent scheme was still in existence and still in course of execution when the "lulling" letters were written, whereas, in the case at bar, the letters were written and delivered after the fraudulent scheme was abandoned.

■ Appellee contends that this scheme—the existence of which was proved only by the fact that stock sales were made on and prior to September 3, 1931—is presumed to have continued until

[1] There is in the indictment no allegation that appellants schemed to defraud any one or to obtain money or property from any one except through sales of Mortuaries stock.

[2] This, it must be remembered, was a stock-selling scheme.

its termination was shown; that the burden of showing such termination was on appellants; and that they did not sustain that burden. This contention must be rejected. There is no presumption that the scheme continued after the stock sales ceased. Cases relied on by appellee as establishing such a presumption[3] were conspiracy cases and, consequently, are not in point. Appellants were not required to prove termination of the scheme. On the contrary, appellee had the burden of proving, not only that the scheme had once existed, but that it was still in existence when the indictment letters were delivered. That burden was not sustained.

. Appellants' motions for directed verdicts should have been granted.

Judgment reversed.

---

[3] United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168; Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; Brown v. Elliott, 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136; Coates v. United States, 9 Cir., 59 F.2d 173; Marino v. United States, 9 Cir., 91 F.2d 691, 113 A.L.R. 975.