DYHRE v. HUDSPETH, Warden.

No. 1864.

Circuit Court of Appeals, Tenth Circuit.

Aug. 17, 1939.

Rehearing Denied Sept. 25, 1939.

Hayes R. Hindry, of Denver, Colo., for appellant.

Summerfield S. Alexander, U. S. Atty., and Homer Davis, Asst. U. S. Atty., both of Topeka, Kan., for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

This is an appeal from an order denying petition for writ of habeas corpus.

On January 25, 1938, an indictment containing eight counts, each charging use of the mails to defraud (18 U.S.C.A. § 338), was returned against petitioner in the United States District Court for the Western District of Louisiana. On the same day petitioner pleaded guilty, and was sentenced to a term of three years in the United States Penitentiary at Leavenworth, Kansas, on the first count and was placed on probation for a period of five years on the remaining counts. Petitioner was delivered to the Warden of said penitentiary February 3, 1938.

A copy of the indictment was attached to the petition. It first alleged that before the dates of committing the offenses set out in eight counts that follow Alfred Dyhre, alias Alfred Stanley, alias G. L. Lewis, alias I. J. Knowles, devised a scheme to defraud named business houses of Lake Providence, Louisiana, by obtaining merchandise by means of false and fraudulent representations; that he represented that he had bank accounts in named banks and drew checks for various amounts payable to the persons to be defrauded, although he had no money on deposit therein and had no intention of the checks being paid. Count One continues:

"That the said defendant on or about the 8th day of October, Nineteen Hundred and 37, at Lake Providence, in the Parish of East Carroll, State of Louisiana, aforesaid, in the division and district aforesaid, so having devised the said scheme and artifice to defraud and in and for executing the scheme and artifice and in and for attempting so to do, and in and for defrauding by and through the said scheme and artifice, the said Pan-Am Service Station, which was one of the persons so intended to be defrauded, as aforesaid, by and through the said scheme and as aforesaid, willfully, unlawfully, knowingly, feloniously, and fraudulently did cause to be placed in the post office of the said United States of America, at Lake Providence, in the Parish of East Carroll, State of Louisiana, to be sent and delivered by the said post office establishment, to the said Bent County Bank of Las Animas, Colorado, aforesaid, a certain check contained in an envelope and duly stamped with uncanceled postage, and addressed to The Whitney National Bank, New Orleans, La., which said envelope contained a check drawn on the Bent County Bank of Las Animas, Colorado, in the sum of $12.65 dated October 8, 1937, and signed G. L. Lewis; that at the time of the mailing of said check the said defendant knew that the name G. L. Lewis, signed to said check was purely

fictitious and by him falsely assumed and used, and the said check was caused to be sent to the said Bent County Bank of Las Animas, Colorado, by him, the said defendant, for the sole and only purpose of defrauding said corporation of the amount of said check, and at the time of writing and mailing said check he, the said defendant, well knew he had no funds on deposit in said bank to the credit of or in the name of G. L. Lewis, and did not intend that said check be paid contrary to the form of the statute" etc.

The remaining seven counts involve checks in smaller amounts, and are the same in substance as the first under which petitioner was sentenced, except some of the checks therein described are made payable to other persons, some of them were signed with the name Dyhre or Knowles, and some of them were drawn on the First National Bank, Las Animas, Colorado, or the Oak Grove Bank, Oak Grove, Louisiana. The mailing charged in each was the same as that charged in the first count. All the checks were alleged to have been mailed on the day they were dated, except the check in the third count was alleged to have been mailed on October 10, 1937, and dated October 20, 1937.

Petitioner alleged under oath in his application for the writ:

"That the facts are that he was guilty of cashing or negotiating eight separate checks for amounts ranging from $3.30 to $12.65, all of which checks were by him passed and cashed by merchants in or about Lake Providence in the Parish of East Carroll, in the State of Louisiana, and all of which checks were subsequently redeemed or made good by this petitioner, although this petitioner did not at the time said checks were passed or cashed as aforesaid, have in the banks upon which said checks were drawn, funds sufficient to pay same. That your petitioner did not, in any manner, use the United States mail to pass or cash said checks or in any other manner in connection with any of the transactions involving the same, nor did your petitioner authorize or direct any person, bank or other corporation to, in any manner, use the mails in passing or cashing said checks."

There was no denial at the hearing of the facts so stated by petitioner-appellant.

The Warden's response pleaded the judgment and sentence of petitioner; and alleged that petitioner signed a waiver December 29, 1937, asking that the charges against him in the Monroe division of the United States District Court for the Western District of Louisiana be transferred to any other division of said court that petitioner might enter a plea of guilty; that petitioner voluntarily, intelligently, and freely entered his plea of guilty; that the substance of the indictment was explained to him; and that petitioner at no time requested the appointment of counsel.

Petitioner Dyhre's letter of December 29, 1937, requesting that the charges pending against him in the Monroe division of said court be transferred to any other division of the court in order that he might plead guilty thereto, was attached to the response.

J. Fair Hardin, Assistant United States Attorney for the Western District of Louisiana, stated in an affidavit accompanying the response that he handled petitioner's case; that upon arraignment the substance of the indictment was explained to petitioner; that Judge Ben C. Dawkins asked petitioner if he understood the charges and he said he did; that petitioner stated he wished to plead guilty; that he made no request of the court at any time for the appointment of counsel; that after entry of the plea of guilty the post office inspector made a statement of the facts in the case; that the affiant submitted petitioner's criminal record to the court and advised the Judge that petitioner was suffering from tuberculosis and had been turned over to the federal authorities by the state authorities on that account, inasmuch as he was an ex-service man and was drawing a compensation of $50 a month from the Government; that Judge Dawkins asked the prisoner if he had any statement to make; that petitioner mentioned his physical condition, and the Judge stated the Government had proper facilities at the institution to which he was going to send him to take care of tubercular cases, and considering his past record it would be necessary to impose a sentence of three years; that petitioner communicated no request to affiant to withdraw his plea of guilty; that petitioner was first arrested by the state authorities; that upon learning petitioner had tuberculosis and was an ex-service man drawing compensation from the Government the service officer of the local American Legion Post obtained his hospital and other records; that the state authorities concluded that inasmuch as the state penitentiary had no facilities for handling a tubercular it would be to the prisoner's in-

terest to turn him over to the federal authorities for prosecution under the mail fraud statute; and that the case had more than the usual attention, chiefly in the interest of the prisoner.

 The fraud charged in each of these counts standing alone is not within the jurisdiction of the federal court, but it may be brought within that jurisdiction by charging that defendant used the United States mail "for the purpose of executing such scheme or artifice or attempting so to do". That was charged here, but the charge clearly shows that the United States mail could not have been used for the purpose of executing or in attempting to execute the fraudulent scheme, because the mailing did not take place until after the defendant had induced the parties named to accept his fraudulent check for merchandise. He had thus accomplished all he set out to do in falsely representing that he had money on deposit in the banks. McNear v. United States, 10 Cir., 60 F.2d 861; Armstrong v. United States, 10 Cir., 65 F. 2d 853; Little v. United States, 10 Cir., 73 F.2d 861; Merrill v. United States, 9 Cir., 95 F.2d 669. In Stewart v. United States, 8 Cir., 119 F. 89, 95, Circuit Judge Thayer said this on the point:

"Another observation to be made concerning the indictment is this: That while the fraudulent scheme, as described, was one whereby the mails were to be employed to induce persons to come to Webb City, to be afterwards defrauded, yet the letter which was deposited in the mails by Gillett, on which the third count is founded, does not seem to have been written to accomplish any such purpose, and for that reason it can hardly be said to have been deposited in the mail in execution of such a scheme as the indictment describes. It was written, as it seems, long after Davis had been induced to go to Webb City and after he had wagered his money and sustained all the loss that he could possibly sustain by reason of the alleged fraudulent scheme."

Moreover, it can not be reasonably contended that there was one fraudulent scheme that extended to all the persons who were induced to cash defendant's checks. Each person who did so was separately defrauded by representations made to him alone, the pleader so charged them, and the Grand Jury found that each count was a separate offense. The defrauding of one had no connection with the defrauding of another.

The mailing of a check in each count seems self-contradictory. Each count charges that the defendant caused to be placed in the post office of the United States at Lake Providence, Louisiana, to be sent and delivered by said post office establishment to the said Bent County Bank, Las Animas, Colorado, (or one of the other two banks named), a certain check contained in an envelope duly stamped with uncanceled postage and addressed to the Whitney National Bank, New Orleans, Louisiana, which said envelope contained a check drawn on the Bent County Bank, Las Animas, Colorado.

 We think a motion in arrest of judgment after verdict or plea of guilty would have been well taken, because of the failure of the record to show jurisdiction.

The order denying the petition for the writ is reversed and the cause remanded to the District Court with directions to discharge the petitioner Dyhre.