## MITCHELL v. UNITED STATES.
### No. 2354.

Circuit Court of Appeals, Tenth Circuit.
March 6, 1942.

J. Forrest McCutcheon, of Dallas, Tex., for appellant.

Everett M. Grantham, U. S. Atty., District of New Mexico, of Santa Fe, N. M., for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Appellant appeals from a conviction, judgment and sentence on an indictment containing eight counts charging violation of Section 215 of the Criminal Code, 18 U.S.C.A. § 338.

For grounds of reversal, appellant contends (1) the court erred in striking appellant's affidavit of personal bias and prejudice filed by the appellant under Section 25, U.S.C.A., Title 28, and refusing to recuse himself in the trial of the said cause; (2) prejudicial error occurring in the trial of the case when one of the government witnesses stated that he had seen the defendant at a previous trial, and statement of government counsel in connection with the admissibility of this evidence; (3) refusal of the trial court to invoke the rule and to exclude all witnesses from the court room while not testifying; and (4) refusal of the court to direct a verdict of not guilty (a) on the insufficiency of the evidence and (b) because the mailing charged in the indictment occurred after the scheme laid in the indictment had terminated, hence no offense under Section 215, 18 U.S.C.A. § 338, was proven.

More than ten days prior to the date of the trial and on June 2, 1941, the appellant filed with the clerk of the trial court a verified affidavit in which he alleged in substance that the trial court had a personal bias and prejudice against him which deprived him of a fair and impartial trial. The basis for the alleged bias and prejudice was that appellant had been previously tried and convicted in the trial judge's court on an indictment containing similar charges; that the conviction had been reversed on appeal and the said indictment dismissed; that the trial judge had stated that the appellant would be convicted in this case and had commented on the particular nature of the testimony which would be introduced against him in the forthcoming trial, and had prejudged the guilt or innocence of the defendant in the present case to such an extent that he could not render a fair and impartial decision in the trial of the case.

The affidavit was not accompanied by the required certificate of counsel of record that such affidavit and application was made in good faith. Appellant attempts to excuse this requirement by alleging that although he had made diligent efforts and was financially able, he had been unable to obtain counsel to represent him and to make the certificate of good faith. On motion of the United States attorney, the affidavit was stricken on the grounds that it was insufficient in law under Section 25, Title 28 U.S.C.A., to disqualify the judge, and for the further reason that the affidavit was not accompanied by the certificate of defendant's counsel of record or any other counsel as required by statute.

The record shows that on May 5, 1941 the defendant appeared in person and by his attorney of record, C. Ray Smith, waived the reading of the indictment and entered a plea of not guilty. C. Ray Smith was the attorney of record when the affidavit of bias and prejudice was filed on June 2, 1941. Thereafter and on June 17, 1941, when the case was called for trial, the appellant was represented by J. Forrest McCutcheon, but there is nothing in the record to indicate that attorney Smith had or did at any time withdraw his appearance as counsel of record for the appellant. Neither does the affidavit of personal bias and prejudice affirmatively state that on June 2, 1941 the appellant was not represented by counsel of record or his intention and desire to represent himself in his own right in the trial of the case.

Section 21 of the Judicial Code, 28 U.S.C.A. § 25, provides that when a party to a civil or criminal proceedings shall make and file an affidavit that the judge before whom the proceedings is to be tried or heard has a personal bias or prejudice either against him or in favor of an opposing party, such judge shall proceed no further but instead another judge shall be designated to act; that the affidavit shall state the facts and the reasons for the belief that such bias and prejudice exists, and shall be filed not less than ten days before the beginning of the term of court or good cause shall be shown for failure to do so, and that no such affidavit shall be filed unless accompanied by a certificate of counsel of record and that such affidavit and application are made in good faith. When such an affidavit is filed, the truth of all of the allegations of fact contained therein is admitted, and it becomes the duty of the court to determine only its legal sufficiency, and if the affidavit meets the requirements of the statutes and is accompanied by a certificate of the counsel of record, the presiding judge can proceed no further but is disqualified. Scott v. Beams, 10 Cir., 122 F.2d 777; Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481; Henry v. Speer, 5 Cir., 201 F. 869; Lewis v. United States, 10 Cir., 14 F.2d 369; Nations v. United States, 8 Cir., 14 F.2d 507, certiorari denied 273 U.S. 735, 47 S.Ct. 243, 71 L.Ed. 866; Craven v. United States, 1 Cir., 22 F.2d 605, certiorari denied 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739; Morris v. United States, 10 Cir., 26 F.2d 444.

The purpose of this section is to secure for all litigants a fair and impartial trial before a tribunal completely divested of any personal bias or prejudice, either for or against any party to the proceedings, and it is the duty of all courts to scrupulously adhere to this admonition and to guard against any appearance of personal bias or prejudice which might generate in the minds of litigants a well-grounded belief that the presiding judge is for any reason personally biased or prejudiced against their cause. But the statute, by its own terms, provides a safeguard against the abuse of the privilege granted by the statute, and that well-founded safeguard is the requirement that the affidavit must be accompanied by a certificate of counsel of record, and without which the affidavit is ineffectual to disqualify the judge. This requirement is founded on the assumption

that a member of the bar or counsel of record will not indulge in reckless disregard of the truth, and further attests to the good faith and belief of the affiant. Beland v. United States, 5 Cir., 117 F.2d 958, certiorari denied 313 U.S. 585, 61 S.Ct. 1110, 85 L.Ed. 1541; Cuddy v. Otis, 8 Cir., 33 F.2d 577; Morse v. Lewis, 4 Cir., 54 F.2d 1027; Currin v. Nourse, 8 Cir., 74 F.2d 273; Newman v. Zerbst, 10 Cir., 83 F.2d 973.

Here the appellant was represented by counsel of record on arraignment. He was represented by the same counsel of record when the affidavit was filed. He was represented by another counsel of record in the trial of the case, but the first counsel of record had not withdrawn his appearance. Appellant now attempts to avoid the requirement of a certificate of counsel of record by saying that he could not secure a certificate of counsel, but that he represented himself in the making and presentation of the affidavit.

The appellant could not represent himself while he was represented by counsel of record; neither could he shuttle his counsel in and out of the case in order to avoid the statute. To so hold would render meaningless and useless the plain provision of the statute which expressly provides for certificate of counsel to accompany the affidavit. Beland v. United States, supra.

Since we hold that the affidavit was ineffectual to disqualify the presiding judge, because it was not accompanied by the required certificate of counsel of record, it is unnecessary for us to determine the legal sufficiency of the facts alleged in the affidavit, and we do not decide that question.

When a witness for the government was asked by government counsel if he knew the appellant, he stated, "I saw the defendant at the trial last September in Albuquerque", where upon appellant's counsel objected and moved that the answer be stricken, and the jury be instructed not to consider it, which the court did immediately. If the answer was improper or prejudicial, it was certainly cured by the instructions of the court. But appellant's counsel persisted by further requesting the court to advise the jury that "the conviction of Mr. Mitchell was reversed". Until suggested by appellant's counsel, nothing had been said concerning a conviction or a reversal. The court, however, again instructed the jury not to consider

the statement but to try the case on the evidence produced before them. Obviously no prejudicial error resulted from the statement of the witness or counsel for the government, but any possible prejudice was wholly and completely eliminated by the timely instructions of the court.

At the inception of the trial, counsel for the appellant asked for the rule as to all witnesses. The request was denied and the appellant assigns the ruling of the court as error. It is conceded that the right to have witnesses placed under the rule and excluded from the court room during the trial is a matter addressed to the discretion of the trial court, and the court's discretion will not be disturbed in the absence of manifest prejudice resulting from the presence of witnesses during the trial of the case. Oliver v. United States, 10 Cir., 121 F.2d 245, and cases cited therein. There is nothing in the record which tends to indicate that the defendant was prejudiced or the jury was influenced by the refusal of the court to exclude witnesses from the court room during the trial, and there is no error in the court's refusal to invoke the rule.

The question of the sufficiency of the evidence and its asserted variance with the charge as laid in the indictment requires a reference to the indictment and the proof on which conviction is based. According to the allegations in count 1 (and by express reference incorporated in each of the counts in the indictment), appellant devised a continuing scheme to defraud, whereby he would and did sell oil and gas leases on lands in New Mexico to victims named therein, and to the public generally. The scheme contemplated the use of the mails in the delivery of leases purchased by the appellant from brokers in New Mexico and the use of the mails in the transmittal of leases sold by appellant to those named in the indictment, and by them forwarded by mail to the Commissioner of Public Lands at Santa Fe, New Mexico, for recordation, and the further use of the mails for the return of the leases to the purchasers after recordation. For the purpose of lulling the victims into a false sense of security, and to allow himself time in which to escape apprehension, the appellant would represent that it was necessary for the purchasers of the lease to mail the same to the Commissioner of Public Lands at Santa Fe, New Mexico, for recordation. That the appellant rep-

resented to purchasers of leases that the same leases could be sold to an oil company which he represented for a sum greatly in excess of the price paid, but before said company would buy the leases, it was necessary to mail the same to the Commissioner of Public Lands for recordation, and the Commissioner to return the lease to the purchaser.

Each count in the indictment (except count 7), after incorporating by reference the scheme as alleged in the first count, charges a separate mailing in connection with the delivery of a lease from a broker in Santa Fe, New Mexico, to the appellant for purposes of resale by the appellant, or the delivery by the purchaser of the lease to the Commissioner of Public Lands at Santa Fe for recordation, or the delivery of the lease by the Commissioner of Public Lands to the purchaser after recordation. Count 7, after incorporating the scheme by reference, alleges the mailing of a letter from the appellant to a broker in Santa Fe, ordering oil and gas leases, one of which was sold to W. H. Lewis who in turn mailed the same to the Commissioner of Public Lands in Santa Fe for recording as alleged in count 8.

That the defendant did devise a scheme to defraud persons named in the indictment and the public generally is not open to question or doubt. Neither can it be said that the mails were not used or caused to be used by the appellant in connection with or corollary to the scheme. The only question is whether the use of the mails as shown by the proof was an ingredient of the scheme, that is, whether the use of the mails is so closely associated with the transactions as to become a part of the scheme as devised. The appellant contends that each transaction as related to each count of the indictment was separate and distinct, and not related to any other; that the proof does not support a continuing scheme to defraud as alleged in the indictment, consequently the use of the mails as proven is no part of the scheme, was not essential to the consummation of it, and therefore does not constitute an offense under the mail fraud statute.

Particularly with reference to counts 1, 2, 3, 4, 5, 6, and 8, it is earnestly contended that in each instance the mails were used only after the transaction had been completed and the money paid by the victims to the appellant, and that the mailing of the leases after they had been sold by the

appellant to the so-called victims to the Commissioner of Public Lands at Santa Fe for recordation, and the return of the leases to the purchaser after recordation, was not in furtherance of the scheme within the intent and meaning of Section 215, 18 U.S.C.A. § 338.

It is well established that the use of the mails after the scheme has been fully consummated and completed in all of its parts cannot supply the essential ingredient for an offense under Section 215, 18 U.S.C.A. § 338. Mitchell v. United States, 10 Cir., 118 F.2d 653; Stapp et al. v. United States, 5 Cir., 120 F.2d 898; McNear v. United States, 10 Cir., 60 F.2d 861; Armstrong v. United States, 10 Cir., 65 F.2d 853; Little v. United States, 10 Cir., 73 F.2d 861, 96 A.L.R. 889; Merrill v. United States, 9 Cir., 95 F.2d 669; Stewart v. United States, 8 Cir., 119 F. 89. But as this court observed in Mitchell v. United States, supra, an entirely different situation is presented when the indictment charges, as it does here, that the scheme so devised was a continuing scheme which included as an essential element thereof the approval and recordation of the assignments of the leases sold, and the return of the same to the purchaser; and that the use of the mails was contemplated and were used to accomplish this purpose. Corbett v. United States, 8 Cir., 89 F.2d 124; United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836; Preeman v. United States, 7 Cir., 244 F. 1, certiorari denied 245 U.S. 654, 38 S.Ct. 12, 62 L.Ed. 533. Or where it is charged, as here, that the mails were used for the purpose of lulling the victims into a false sense of security to avoid apprehension. Preeman v. United States, supra; Newingham v. United States, 4 F.2d 490, certiorari denied 268 U.S. 703, 45 S.Ct. 638, 69 L.Ed. 1166; Bogy v. United States, 6 Cir., 96 F.2d 734, certiorari denied 305 U.S. 608, 59 S.Ct. 68, 83 L.Ed. 387.

Here it is charged and proven that the appellant devised a scheme to defraud, by which he would induce those named in the indictment and the public generally to purchase oil and gas leases on lands in New Mexico, and that he would cause to be delivered to them through the mails the evidences of such leases which, when sold to the victims, would be mailed to the Commissioner of Public Lands at Santa Fe, New Mexico, for recordation, and returned to the purchasers by the Commissioner of Public Lands through the mails. It is specifically charged that the scheme so devised was a continuing scheme and it is shown by the evidence that the appellant called on the victims numerous times, and that by his sly and artful representations, he sought to and did gain their confidence. He advised them to mail the leases which he had sold them to the Commissioner of Public Lands at Santa Fe for recordation, and that when they were returned by the Commissioner after recordation, they could be sold to a company which he represented, or to some other person, for a large profit. The proof amply supports these charges.

It would serve no useful purpose to recount in detail the various means and methods employed by the appellant in the consummation of the scheme. It is sufficient to say that under the allegations of the indictment, and the proof in support thereof, the scheme as devised and executed contemplated the delivery of the leases through the mails to the Commissioner of Public Lands in Santa Fe for purposes of recordation, and the return to the purchaser through the mails as a necessary part of the scheme, and that therefore the mails were used to accomplish the purposes intended; and that such use of the mails was not purely incidental or unrelated to the scheme, but was a necessary and essential part thereof.

Count 7 relates to the mailing of a letter by appellant to a broker in Santa Fe, ordering certain leases to be sent to him through the mail, one of which was later sold to the party named in count 8 of the indictment, and by the said party mailed to the Commissioner of Public Lands for recordation. When considered in connection with the general scheme to defraud as outlined in the indictment, we think that this transaction is amply shown to be an essential part of the whole scheme and therefore clearly within the condemnation of the statute.

We conclude that the proof amply supports the allegations contained in each count in the indictment; that the court committed no error in refusing to direct a verdict of not guilty, and that the case should be and is affirmed.