**Edward GORDON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 22637.

United States Court of Appeals
Fifth Circuit.

March 16, 1966.

James R. Gough, Asst. U. S. Atty., Woodrow Seals, U. S. Atty., Jerald David Mize, Ronald J. Blask, Asst. U. S. Attys., Houston, Tex., for appellee.

Before HUTCHESON, JONES and WATERMAN,* Circuit Judges.

HUTCHESON, Circuit Judge:

Appellant Edward Gordon was charged in a three count indictment with mail fraud under 18 U.S.C. Sec. 1341.[1] On a jury trial Gordon was acquitted on Counts One and Two, but was found guilty on Count Three and sentenced therefor. We find that conviction under Count Three was improper and accordingly reverse and remand with directions to acquit.

The facts are without material dispute and may be simply stated. The three counts of the indictment are identical except as to dates and the persons receiving the letters. Each count alleges, in substance, that Gordon devised a scheme to obtain money falsely and fraudulently by inducing people to make reservations, and pay in advance, for a European tour to be conducted by him, while intending not to provide the tour. The scheme purportedly began on or about August 3, 1962, and continued to on or about July 5, 1963. On August 3, 1962, Gordon mailed a newsletter to former customers to determine if there was interest in a Scandinavian-North Europe tour; this newsletter is the subject of Count One. Interest in the tour developed and several persons signed up and made down payments. On April 11, 1963, letters were mailed by Gordon to all those who had made down payments requesting the remaining balance for the tour cost; one of these letters is the subject of Count Two. Shortly thereafter Gordon experienced a complete

J. Lev Hunt, Corpus Christi, Tex., for appellant.

---

* Of the Second Circuit, sitting by designation.

1. Section 1341. *Frauds and Swindles.*
   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, * * * shall be fined not more than $1,000 or imprisoned not more than five years, or both.

business failure. During the latter part of May and the first part of June, 1963, Gordon orally advised (by telephone) the prospective tour participants of his financial difficulties, that the tour had been cancelled, and that he would attempt to refund all monies paid to him for the tour. By letter dated June 6, 1963, Gordon again notified each prospective tour participant of his difficulties; one of these letters [2] is the subject of Count Three, upon which Gordon was convicted.

The essential elements of mail fraud under Section 1341 are: (1) devising or intending to devise any scheme or artifice to defraud; (2) placing in the mails a letter intended to be sent by the Post Office Department; and (3) so using the mails in furtherance of the scheme or artifice. The jury found Gordon guilty on Count Three. The facts presented in support of this count, then, must satisfy each of the essential elements of mail fraud. No question is raised regarding the first two elements; clearly facts were before the jury from which to conclude that Gordon did devise a scheme to defraud, and clearly the June 6th letter involved the use of the mails. The narrow issue presented by this appeal is whether the June 6th letter was mailed in furtherance of the alleged scheme—or in the language of the statute (note 1 supra), "for the purpose of executing such scheme." Gordon asserts that it could not have been, since by that time the alleged scheme, assuming there was such, had been fully executed. The Government, on the other hand, argues that the June 6th letter was but a continuation of the alleged scheme and "written to escape detection of the fraud by the victims, to assist in retaining the fruits of the fraud, and to lull the victims into inaction." We are convinced, on the record before us, that Gordon's assertions must prevail.

We of course recognize the correctness of the general proposition advanced by the Government. Where the use of the mails is a means of concealing the fraud and avoiding detection, by lulling the victim into inaction, and, as such, is a part and continuation of the original scheme to defraud, a conviction of mail fraud is proper and will be sustained. Hayden v. United States, 343 F.2d 459, 460 (9th Cir. 1965), cert. denied, 382

2. Mrs. G. M. Woolsey,                                                      June 6, 1963
   506 Harrison
   Corpus Christi, Texas.
   Dear Mrs. Woolsey,
       It is with great regret that I must inform you that the South Texas Travel Service is insolvent and unable to meet its financial obligations.
       You have paid for a trip to Europe, and we are unable to perform as we have always been able to do before. I am sure that you have been looking forward to this trip with great expectations and it is extremely difficult for us to advise you that the insolvency of this business at this time makes performance impossible.
       It is the plan of the owner to close the doors of the Travel Service at once, to possibly make an assignment for the benefit of creditors, and to seek employment somewhere in an effort to repay you and all others to whom we are obligated.
       As to how soon you will be repaid, I can not state at this time. I have consulted Ed. P. Williams, Attorney, 311 Jones Building, Corpus Christi, Texas, as to whether voluntary bankruptcy would be advisable or in the best interest of the creditors. In case I am unable to find employment in this vicinity, I will keep Mr. Williams informed of my whereabouts and he has agreed to forward promptly any communications for South Texas Travel Service or for me personally. It is possible that he can work out a series of notes for me to sign.
       Your disappointment at receiving this letter is no greater than mine at being compelled to send it, but you may be assured that it is my intention to see that you are fully repaid.
                                        Sincerely yours,
                                        /s/ Ed Gordon
                                        Edward Gordon, President

U.S. 828, 86 S.Ct. 63, 15 L.Ed.2d 72 (1965); Davis v. United States, 125 F.2d 144 (6th Cir. 1942) (per curiam); United States v. Riedel, 126 F.2d 81, 83 (7th Cir. 1942); Preeman v. United States, 244 F. 1, 9 (7th Cir. 1917), cert. denied, 245 U.S. 654, 38 S.Ct. 12, 62 L.Ed. 533 (1917). Cf. United States v. Sampson, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962). While correct in the abstract, this proposition has no application to the facts of the present case. As firmly established as the rule advanced by the Government is the principle that if the scheme with which the defendant is charged has "reached fruition" or has been abandoned prior to the mailing complained of, the mailing cannot have been "for the purpose of executing" the scheme and thus will not support a mail fraud conviction. Parr v. United States, 363 U.S. 370, 393, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960); Kann v. United States, 323 U.S. 88, 94, 65 S.Ct. 148, 89 L.Ed. 88 (1944); Stapp v. United States, 120 F.2d 898, 899 (5th Cir. 1941); Merrill v. United States, 95 F.2d 669, 670 (9th Cir. 1938); McNear v. United States, 60 F.2d 861, 863 (10th Cir. 1932). The record before us conclusively shows that if a scheme did exist, it was completed or abandoned long before the June 6th letter was mailed. The money to be obtained under the alleged scheme had been solicited and collected. Gordon then experienced business reversals, and he did not thereafter solicit more funds. Rather than attempt to conceal his failure, avoid detection, or lull his "victims" into inaction, Gordon instead notified each prospective tour participant, both orally and in writing, of his current status and what he hoped to do about it. The June 6th letter was merely confirmation of the earlier telephone conversation. It certainly had no lulling effect on its recipients; in fact several of them took immediate action against Gordon in an attempt to recover their money. More important, the letter could not reasonably be interpreted as intended to lull its recipients into inaction. The alleged scheme was completed and abandoned; the June 6th letter could not have been sent in furtherance thereof.[3] Accordingly Gordon's conviction cannot stand and he is entitled to an acquittal.

Reversed and remanded with directions to acquit.

---

3. The trial judge apparently came close to reaching this same conclusion. In considering a motion for acquittal notwithstanding the verdict, he stated:

I have my serious doubts that the conviction on the third count will stand.

By that time [June 6th], everything was consummated. The mails didn't have to be used any more when the letter was sent on June 6th. He had gotten all the money by then.