**UNITED STATES of America, Plaintiff,**

v.

**Thomas A. BURGER, Sherwood E. Blount, Jr., James R. Cruce, Cathy (nee Allin) Cruce, Thomas D. Dunn, Jr., Joseph Grosz, and Kim A. Wise, Defendants.**

**No. 91–40002–01–07.**

United States District Court, D. Kansas.

April 16, 1991.

Lee Thompson, U.S. Atty., Wichita, Kan., Richard L. Hathaway, Asst. U.S. Atty., Topeka, Kan., for the U.S.

Dennis W. Moore, Overland Park, Kan., for Thomas A. Burger.

Gary D. McCallister, Davis, Wright, Unrein, Hummer & McCallister, Topeka, Kan., Charles M. Meadows, Jr., Paul Edward Coggins, Kimberly Colby Harris, Meadows, Ownes, Collier, Reid & Coggins, Dallas, Tex., for Sherwood E. Blount, Jr.

Mark L. Bennett, Jr., Glenda L. Cafer, Bennett, Dillon & Callahan, Topeka, Kan., for James R. Cruce.

Mark L. Bennett, Jr., Glenda L. Cafer, Bennett, Dillon & Callahan, Topeka, Kan., Thomas M. Bradshaw, Thomas H. Stahl, Daniel O. Herrington, David L. Mills, Kansas City, Mo., for Cathy Cruce.

James L. Eisenbrandt, Bryan, Cave, McPheeters & McRoberts, Leawood, Kan., for Thomas D. Dunn, Jr.

Donald R. Hoffman, Topeka, Kan., Elliot Samuels, Chicago, Ill., for Joseph Grosz.

Les E. Diehl, Gerald L. Goodell, Topeka, Kan., Frank H. McCarthy, Tulsa, Okl., Layn R. Phillips, Irell & Manella, Newport, Cal., for Kim A. Wise.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on numerous pretrial motions and motions *in limine* filed by the defendants.[1] On April 12, 1991, the court heard oral arguments on the motions. The above-named defendants have been charged in a 25–count Indictment, issued January 10, 1991. Count 1 charges defendants with a Pinkerton-type conspiracy, *see Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), Counts 2–24 charge them with violations of the bank fraud statute, 18 U.S.C. § 1344, and Count 25 charges a violation of the false statement statute 18 U.S.C. § 1001. Additionally, Counts 2–25 charge defendants with aiding and abetting, in violation of 18 U.S.C. § 2.

In their current motions, defendants move to dismiss the Indictment, and also move for severance on the basis of both misjoinder and prejudicial joinder. Additionally, defendants move the court for individual *voir dire,* additional peremptory strikes, disclosure by the government of its witnesses and their order of testimony, and exception from sequestration. Finally, defendants make several motions requesting pretrial evidentiary determinations. The court will discuss these motions *seriatim.*

## MOTIONS TO DISMISS THE INDICTMENT

In ruling on a motion to dismiss the Indictment, the court treats the allegations as true and construes all facts in a light most favorable to the government. *United States v. Dorfman,* 532 F.Supp. 1118, 1123 (N.D.Ill.1981). The court views the Indictment as a whole, with an emphasis on common sense, rather than technicalities. *United States v. Mobile Materials, Inc.,* 871 F.2d 902, 906–07 (10th Cir.1989). A motion to dismiss an indictment will not be entertained if the dispute centers on factual questions, as such questions are within the province of the jury. *United States v. Kilpatrick,* 821 F.2d 1456, 1462 n. 2 (10th

---

1. Pursuant to the pretrial scheduling order entered by Magistrate Newman on February 13, 1991, all defendants are deemed to join in their co-defendants' motions unless a defendant has moved to "opt-out." Accordingly, defendant Burger's motion to adopt the motions of co-defendants for dismissal and severance (Doc. 198) is moot, as is defendant Blount's motion to adopt all motions to dismiss and motions for severance (Doc. 201). Further, the court finds defendant Blount's motion for early release of jury information (Doc. 146) to be moot. The court further notes that it disposed of defendant Blount's motion to allow the absence of one or more of his trial attorneys (Doc. 152) during the hearing.

Cir.1987), *aff'd*, *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

Defendants move to dismiss the Indictment on four grounds: prosecutorial misconduct,[2] double jeopardy, duplicity and insufficiency. Defendants have not convinced the court that the Indictment should be dismissed for any of these asserted grounds.

### A. Prosecutorial Misconduct

■ Prosecutorial misconduct, in and of itself, is not a valid reason for dismissing an indictment, and such dismissals are rarely upheld. *Kilpatrick*, 821 F.2d at 1465. Indeed, an indictment may be dismissed for prosecutorial misconduct only if such misconduct is flagrant enough to significantly infringe on the grand jury's exercise of independent judgment so that the grand jury cannot make an informed and unbiased determination of probable cause. *Id; United States v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir.1989). As the Supreme Court expressed in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), prosecutorial misconduct will merit dismissal of an indictment only when it substantially influenced the grand jury's decision to indict or raises grave doubt that the decision to indict was substantially influenced. *Id.* at 256, 108 S.Ct. at 2374.

The court concludes that defendants' claims of prosecutorial misconduct, namely that the government failed to present substantially exculpatory evidence, misinformed the grand jury as to the applicable law, and made inflammatory and prejudicial references to publicity and defendant Dunn's representation by counsel, are insufficient to warrant dismissal of the instant Indictment. Even assuming, *arguendo*, that all of defendants' claims were true, their allegations do not meet the standard set forth in *Nova Scotia;* the defendants simply have not made out a case that the

grand jury's independence was overborne by the government and have not raised a grave doubt that the claimed misconduct substantially influenced the grand jury's determination of probable cause. Moreover, the court has reviewed the 31 grand jury transcripts offered as exhibits and is convinced that the grand jury was active, independent, thoughtful, and not submissive to the statements and suggestions of the government. *See Kilpatrick*, 821 F.2d at 1473.

#### 1. *Exculpatory Evidence*

■ The Tenth Circuit requires a prosecutor to reveal known, substantially exculpatory evidence to the grand jury. *See, e.g., United States v. Page*, 808 F.2d 723, 728 (10th Cir.), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683 (1987). "Substantially exculpatory evidence" is evidence that clearly negates guilt and that would change a grand jury's decision to charge a defendant with a crime. *Nova Scotia*, 487 U.S. at 263, 108 S.Ct. at 2378; *United States v. Reid*, 911 F.2d 1456, 1460 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991).

Having carefully reviewed defendants' submissions of "substantially exculpatory evidence," which they claim should have been disclosed to the grand jury, the court finds that the evidence is only tangentially related to the crimes charged. For example, the "tax benefit structure" of the transaction alleged in Count 4 is irrelevant to whether the defendants, by means of this transaction, executed a scheme to defraud Peoples Heritage Savings and Loan. "[E]ach individual component of the scheme need not be illegal in order to find a scheme to defraud. It is sufficient that the whole scheme involve fraudulent conduct." *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir.1987).

Despite defendants' assertions that certain evidence completely negates any inference of intentional conduct on their part,

---

**2.** Defendant Dunn also moves for dismissal based upon the alleged actions of the Resolution Trust Corporation ("RTC"). The court is satisfied that the two isolated instances in which

potential witnesses refused to speak with defendant Dunn's counsel were not the result of government misconduct.

the court concludes that the evidence discussed in defendants' motions is not so clearly negating of guilt that the government was obligated to present it to the grand jury. Rather, the court concludes that the examples proffered are simply bits and pieces of potentially exculpatory evidence, which the government is not obligated to "ferret out," and which, in the scope of the grand jury's investigation, would have had no substantial influence on the grand jury's decision to issue an indictment. In this respect, *United States v. Williams*, 899 F.2d 898 (10th Cir.1990), on which all defendants rely heavily, is distinguishable.

### 2. *Evidence of Civil Regulatory Violations*

■ Whether the government misinformed or misled the grand jury into believing civil regulatory violations created criminal culpability, as the defendants claim, such a claim is insufficient to justify dismissal of the Indictment. Giving erroneous legal instructions to a grand jury does not constitute grounds for dismissing an indictment valid on its face. *United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir. 1986), *cert. denied*, — U.S. —, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990).

### 3. *References to Publicity and Representation by Counsel*

■ Defendants' claims of prosecutorial misconduct on these two fronts are inadequate to overcome the presumption of regularity that attaches to grand jury proceedings. *Kilpatrick*, 821 F.2d at 1473. Defendants cite no law in support of their propositions that negative publicity or references to a target's representation by counsel warrants dismissal of an indictment. Indeed, the law is directly contrary to these propositions. The grand jury's exposure to pre-indictment publicity does not raise a presumption of prejudice or bias, and the court's research has revealed that such exposure has never prompted the harsh result of dismissal. *See, e.g., United States v. Washington*, 705 F.2d 489, 499 (D.C.Cir.1983); *United States v. Finley*, 705 F.Supp. 1297, 1307 (N.D.Ill.1988). Sim-

ilarly, references to a target's representation by counsel are insufficient to warrant dismissal. *United States v. Moeckly*, 769 F.2d 453, 465 (8th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1196, 89 L.Ed.2d 311 (1986).

### B. Double Jeopardy

■ Defendants also move to dismiss the Indictment on grounds of double jeopardy, claiming that the two conspiracies pled in this case and companion case number 91–40001–01 are actually one continuing conspiracy. Defendants' double jeopardy argument is premature. Jeopardy has not attached, and will not attach, until the jury is empaneled and sworn. *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975); *United States v. Bizzell*, 921 F.2d 263, 266 (10th Cir.1990). Furthermore, the administrative hearings and civil proceedings, on which defendant Burger seeks to rely for his double jeopardy argument, do not constitute prosecutions. *Bizzell*, 921 F.2d at 265. The court will entertain this argument when, and if, it becomes ripe.

### C. Duplicity

■ Conversely, defendants argue that this Indictment alleges not one conspiracy, but multiple conspiracies. Again, the court cannot decide at this juncture whether the Indictment pleads one or more conspiracies. Such a factual determination is for the jury, and is thus inappropriately presented as a basis for dismissal. *United States v. Dickey*, 736 F.2d 571, 581 (10th Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).

### D. Insufficiency

Finally, the defendants argue that the Indictment is insufficient for vagueness and for failure to charge an offense. The court finds the Indictment is far from vague and additionally finds that all counts adequately charge an offense.

■ The principles for determining the sufficiency of an indictment are well settled. The test for sufficiency is not whether the indictment could be more definite and certain. *United States v. Salazar*, 720 F.2d 1482, 1487 (10th Cir.1983), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985). An indictment is sufficient if it contains the elements of the offense and apprises the defendant of what he must be prepared to meet, and if it shows the defendant to what extent he may plead double jeopardy. *United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976). Moreover, an indictment need not state details of evidence on which the case would rest. *Id.* at 565.

Defendants' assertions that the Indictment is insufficient because of vagueness are nothing more than a reassertion of their Bill of Particulars arguments, which the court previously denied. Thus, the court will not entertain these arguments again.

■ As to defendants' claims that the Indictment fails to charge an offense, the court has determined that none of the counts suffer such an infirmity. The Indictment, read as a whole, adequately charges defendants with conspiracy, bank fraud and false statements to a federal agency. Not only does the Indictment sufficiently set forth the essential elements of each crime, it does so with great particularity, specifically describing the alleged conspiratorial scheme and the transactions which allowed defendants to perpetrate the scheme.

■ With regard to the bank fraud counts, defendants claim that the Indictment "bootstraps" alleged civil regulatory violations into violations of a criminal statute, 18 U.S.C. § 1344, and thus is legally insufficient. A careful and objective review of the Indictment reveals that the criminal conduct with which defendants are charged is fraud by concealment, not fiduciary breaches or civil regulatory violations. Although defendants' concealments may have been prompted by a desire to circumvent their fiduciary duties and cer-

tain regulations, the charges of fraud in the Indictment are not based on defendants' alleged breaches of fiduciary duty or violations of civil regulations. Rather, as in *United States v. Frost*, 914 F.2d 756 (6th Cir.1990) and *United States v. Walker*, 871 F.2d 1298 (6th Cir.1989), the defendants are charged with intentionally concealing affiliate interests in loans made by Peoples Heritage.

■ With regard to the false statement count, defendants seek to exempt themselves from prosecution through the "exculpatory no" doctrine, which is often applied to 18 U.S.C. § 1001. The "exculpatory no" doctrine "provides that an individual who merely supplies a negative and exculpatory response to an investigator's questions does not make a false statement in violation of section 1001." *United States v. Taylor*, 907 F.2d 801, 802 (8th Cir.1990). To exempt themselves from prosecution under section 1001, the defendants must prove *all* of the following: (1) The statement was not made in pursuit of a claim to a privilege or a claim against the government. (2) The statement must have been made in response to inquiries initiated by a federal agency or department. (3) The statement must not have perverted the basic functions entrusted by law to the agency. (4) The statement must have been made in the context of an investigation rather than in the routine exercise of administrative responsibility. (5) The statement must have been made in a situation in which a truthful answer would have incriminated the declarant. *Id.* at 805–06.

Defendants have made no attempt to prove the above five factors, but merely assert that a truthful response on a Federal Home Loan Bank Board form would have incriminated them. Even if the court were to accept this assertion, the incriminatory nature of the statement would not allow the defendants to invoke the "exculpatory no" doctrine under the facts of this case. Quite simply, the form which required a truthful response was not part of an investigation. Instead, the form was a part of an administrative function routinely performed by the agency: an examination

of a savings and loan association under the FHLBB's authority and supervision. This fact alone puts the "exculpatory no" doctrine beyond defendants' reach. Consequently, Count 25 is not subject to dismissal on the basis of this doctrine.

Finally, defendant Grosz asks the court to dismiss Count 13 for what he believes are factual misstatements. Factual determinations are for the jury, and allegations of factual misstatements are an inappropriate basis for a motion to dismiss. *See, e.g., Torkington,* 812 F.2d at 1354.

## E. Summary

Dismissing an indictment is an extraordinary remedy. *Buchanan,* 787 F.2d at 487. Defendants have not met the tremendous burdens they must meet to justify dismissal of the instant Indictment. The alleged prosecutorial misconduct did not deprive the grand jury of its independence, defendants' claims of double jeopardy and duplicity are premature,[3] and the Indictment sufficiently alleges the crimes of conspiracy, bank fraud and false statement. Accordingly, defendants' motions to dismiss the Indictment are denied.

## MOTIONS FOR SEVERANCE

Defendants seek severance pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure. Generally, persons jointly indicted should be jointly tried, especially when they are charged with conspiracy. *See, e.g., United States v. Rinke,* 778 F.2d 581, 590 (10th Cir.1985); *United States v. Hines,* 696 F.2d 722, 732 (10th Cir.1982). Defendants' numerous arguments for severance of counts and defendants do not militate against the application of this general rule.

Defendants argue that the duplicitous nature of the Indictment requires the court to sever various counts for separate trials. Although the final decision-makers on the issue of duplicity will be the jurors, *see supra,* pp. 1435–1436, the court concludes that the Indictment meets the relatedness requirements of Federal Rule of Criminal Procedure 8(a) and (b). The conspiracy charge in Count 1 connects not only the defendants in the "same series of acts or transactions," but also connects the transactions pled in Counts 2–25 as part of a common scheme or plan. *See United States v. Jones,* 578 F.2d 1332, 1338 (10th Cir.), *cert. denied,* 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259 (1978); *United States v. Heldon,* 479 F.Supp. 316, 322 (E.D.Pa. 1979). Therefore, the court will not order severance on the basis of defendants' claims of misjoinder.

The court also has determined that the defendants have not met their heavy burden of proving clear and actual prejudice under Fed.R.Crim.P. 14. *See, e.g., United States v. McConnell,* 749 F.2d 1441, 1444–45 (10th Cir.1984). Indeed, most of defendants' arguments are grounded in bases which have been expressly rejected as insufficient to entitle a defendant to a separate trial, *e.g.:* disparate evidence and "spillover", *United States v. Hack,* 782 F.2d 862, 870 (10th Cir.), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986); conflicting defenses which are no more than "fingerpointing," *United States v. Ready,* 574 F.2d 1009, 1015 (10th Cir. 1978); and the choice of some, but not all, defendants to testify, *United States v. Mayes,* 917 F.2d 457, 461 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1087, 112 L.Ed.2d 1192 (1991). Thus, the court's response to the defendants' severance arguments will be brief.

First, defendants argue that they will be prejudiced by the "spillover effect" of evidence which will be admitted against co-defendant. Given that the Indictment pleads a *Pinkerton* conspiracy, the court finds little chance of relief from "spillover" even if severances were granted. Under the *Pinkerton* doctrine, if an agreement is shown, co-conspirators are equally responsible for all acts committed in furtherance of the conspiracy. Accordingly, the evidence of a co-conspirator's acts in furtherance of the conspiracy would be admissible,

---

**3.** Similarly, the court finds no merit in defendant Grosz's motion to limit *seriatim* prosecutions (Doc. 142). The court is simply without authority to grant such a motion.

even in separate trials. *United States v. Ras*, 713 F.2d 311, 315 (7th Cir.1983). Furthermore, a complaint of possible "spillover," is simply insufficient to warrant seven separate trials. *United States v. Pinto*, 838 F.2d 426, 434 (10th Cir.1988); *United States v. Mabry*, 809 F.2d 671, 682–83 (10th Cir.), *cert. denied*, 484 U.S. 874, 108 S.Ct. 33, 98 L.Ed.2d 164 (1987); *see also, United States v. Jenkins*, 904 F.2d 549, 555–57 (10th Cir.), *cert. denied*, ─── U.S. ───, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990) (discussing effect of 404(b) evidence on severance determination).

■ Next, defendants claim that severance is required because they will be presenting antagonistic defenses. The court concludes that defendants may be presenting different theories of defense, but that the defenses, as represented in the defendants' motions, are not mutually exclusive. To warrant a severance,

> [T]he conflict between co-defendant "must be so intense that there is a danger the jury will unjustifiably infer from the conflict alone that both defendants are guilty." ... The defendant must demonstrate that the acceptance of one party's defense would tend to preclude the acquittal of the other, or that the guilt of one defendant tends to establish the innocence of the other.

*United States v. Peveto*, 881 F.2d 844, 857 (10th Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989) (citation omitted). Conflicting theories or defendants' attempts to cast blame on one another do not require severance. *Id.* Upon consideration of the arguments and representations made by defendants, the court finds that defendants' "antagonistic" defenses are nothing more than "fingerpointing," and the court will not order severance on this basis.

■ With regard to the "advice of counsel" defense, the court is not convinced that the defendants have proven entitlement to this defense, nor is the court persuaded that the situation requiring severance in *United States v. Walters*, 913 F.2d 388 (7th Cir.1990), is present in this case. Whether the defendants can prove entitlement to the advice of counsel defense, and whether they sought advice individually, as in *Walters*, are questions of fact that cannot be resolved at this time, primarily because defendants have failed to put sufficient information before the court.

■ Next, defendants argue that severance is justified because co-defendants will offer exculpatory evidence in a separate, but not a joint, trial. The defendants, however, have not made the required showing, namely:

> (1) the likelihood that the co-defendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; (2) the significance of the testimony in relation to the defendant's theory of defense; (3) the exculpatory nature and effect of such testimony; (4) the likelihood that the co-defendant's testimony would be impeached; (5) the extent of prejudice caused by the absence of the testimony; (6) the effect of a severance on judicial administration and economy; (7) the timeliness of the motion.

*McConnell*, 749 F.2d at 1445. Specifically, the defendants have merely recited that co-defendants may testify at a joint trial, which is decidedly insufficient, and none of the co-defendants who will allegedly testify have given any indication that they intend to admit their own guilt in aid of their alleged co-conspirators. *See, e.g., United States v. Espinosa*, 771 F.2d 1382, 1408 (10th Cir.), *cert. denied*, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985); *United States v. DeSimone*, 660 F.2d 532, 539–40 (5th Cir.1981), *cert. denied*, 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 (1982); *United States v. Finkelstein*, 526 F.2d 517, 524 (2d Cir.1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). The court holds that defendants' showing of need for their co-defendants' allegedly exculpatory evidence is insufficient to warrant severance.

■ Finally, defendant Cathy Cruce argues that without a severance, she will have to relinquish her marital privilege if she chooses to testify. The court is unpersuaded by this argument and believes that

this defendant has misunderstood the holding of *Trammel v. United States*, 445 U.S. 40, 53, 100 S.Ct. 906, 914, 63 L.Ed.2d 186 (1979) (marital privilege can only be asserted by testifying individual, not by one against whom the testimony is offered). Essentially, defendant Cathy Cruce appears reluctant to offer testimony in her own defense, as such testimony may incriminate her husband and co-defendant, James Cruce, who cannot prevent her testimony. A defendant's decision to relinquish her constitutional privilege against self-incrimination would seem to be a much more important consideration than the relinquishment of a mere testimonial privilege. And, whether defendant Cathy Cruce decides to testify in her own defense or not, such a decision is not grounds for severance. *Mayes*, 917 F.2d at 461; *United States v. Wright*, 826 F.2d 938, 945 (10th Cir.1987).

■ Defendants have not met their heavy burden of proving clear and actual prejudice from being tried jointly for their alleged conspiratorial actions. Furthermore, whatever potential prejudice may result from this multi-defendant trial can be substantially cured by the typical limiting instructions to the jury. Thus, in the exercise of its discretion, the court denies defendants' motions for severance.

## MOTION FOR INDIVIDUAL VOIR DIRE

■ The conduct of *voir dire* is left to the trial court's sound discretion and will not be disturbed absent a clear showing of an abuse of that discretion. *United States v. Whitt*, 718 F.2d 1494, 1497 (10th Cir. 1983). As authorized by Federal Rules of Criminal Procedure 24(a), and as repeatedly approved by the Tenth Circuit, the court traditionally conducts *voir dire* and allows both the prosecution and the defense to pose a limited number of additional questions to the jury panel. The court sees no reason to depart from its traditional *voir*

*dire* practices, *i.e.*, that of conducting the *voir dire* itself while allowing the parties to supplement the court's examination. Defendants have not shown that the publicity surrounding this case has been of such an inflammatory, defendant-directed nature as to presuppose a tainted jury pool or panel. *United States v. Hall*, 536 F.2d 313, 324 (10th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976). Individual *voir dire* is an unnecessarily time-consuming process when such a showing has not been made. *Whitt*, 718 F.2d at 1499. Therefore, defendants' motion for individual *voir dire* is denied.[4]

## MOTION FOR ADDITIONAL PEREMPTORY STRIKES

■ The defendants move the court for an unidentified number of additional peremptory strikes. Under Fed.R.Crim.P. 24(b), multiple defendants jointly indicted and tried have no right to any more challenges than allowed a single defendant. *United States v. Espinosa*, 771 F.2d 1382, 1406 (10th Cir.), *cert. denied*, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985). As long as defendants receive a fair trial by an impartial jury, the number of peremptory challenges is not subject to attack. *United States v. Hueftle*, 687 F.2d 1305, 1309 (10th Cir.1982). Defendants will thus be given the ten peremptory challenges allowed by Rule 24(b), to be exercised as they see fit.

## MOTION FOR GOVERNMENT TO DISCLOSE ORDER OF WITNESSES

■ Defendants request that the court order the government to disclose the order in which its witnesses will testify one week prior to trial. The government responds that defendants have yet to agree to reciprocal disclosure and that the order of its witnesses cannot be determined with such precision prior to trial.

---

**4.** Further, the court wishes to note that if this case proceeds to trial with seven defendants, the court will limit the government's *voir dire* to 30 minutes. Likewise, the court will allow each

defendant 15 minutes of *voir dire*. Additionally, opening statements of the parties will be limited, however, the court will not announce such limitations until the commencement of the trial.

It is settled law in this circuit that the government need not disclose the names of its witnesses. *United States v. Baca*, 494 F.2d 424, 427 (10th Cir.1974). Thus, it follows that the government is not obligated to disclose the order in which its witnesses will testify.

Nevertheless, in an effort to reduce the potential for delay of this lengthy trial, the court will order both the government and the defense to exchange witness lists by no later than Monday, April 22, 1991, and for the release of witnesses' order of call one day in advance of the expected testimony.

### MOTION FOR EXCEPTION FROM SEQUESTRATION

 Defendant Blount asks that his investigator, Mr. Max Wayman ("Wayman"), be allowed to remain in the courtroom under the third exception to sequestration found in Federal Rules of Evidence 615, *i.e.*, that his presence is essential to the presentation of Mr. Blount's defense. In order to warrant such an exception from sequestration, the defendant must show that his attorney will not be able to effectively function without the presence of Wayman. *Oliver B. Cannon & Son, Inc. v. Fidelity & Casualty Co.*, 519 F.Supp. 668, 678 (D.Del.1981). Defendant Blount has not made such a showing. Furthermore, the court concludes that allowing Wayman to sit through the testimony of other witnesses would be contrary to the purpose of sequestration; in other words, it would allow him to shape his testimony to directly refute or corroborate witnesses' testimony to favor defendant Blount. *See, e.g., Queen v. Washington Metro. Area Transit Auth.*, 842 F.2d 476, 481 (D.C.Cir. 1988). Accordingly, defendant Blount's motion to except Wayman from mandatory sequestration under Rule 615 is denied.

### MOTION FOR ADVANCE NOTICE OF RULE 201 EVIDENCE

Defendants move for advance notice of any matter of which the court will take judicial notice, and the government has agreed to reciprocal disclosure one week prior to trial. Therefore, the court will order that the parties reciprocally disclose any evidence they intend to offer pursuant to Federal Rules of Evidence 201 on or before Monday, April 22, 1991.

### MOTION TO EXCLUDE EVIDENCE OF CIVIL VIOLATIONS

 Relying on the Fifth Circuit case of *United States v. Christo*, 614 F.2d 486, 492 (5th Cir.), *reh'g. denied*, 618 F.2d 1390 (1980), defendants move to exclude all evidence of civil regulatory violations or violations of internal policies generated by Peoples Heritage. Given the government's representations that this evidence is probative of defendants' motive and intent, the court concludes that this evidence should be admissible for proving the requisite element of intent, as it was in the following cases: *United States v. Cordell*, 912 F.2d 769 (5th Cir.1990); *United States v. Castiglia*, 894 F.2d 533 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 68, 112 L.Ed.2d 42 (1990); *United States v. Kindig*, 854 F.2d 703 (5th Cir.1988); *United States v. McCright*, 821 F.2d 226 (5th Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988); *United States v. Stefan*, 784 F.2d 1093 (11th Cir.), *cert. denied*, 479 U.S. 855, 107 S.Ct. 193, 93 L.Ed.2d 125 (1986); and *United States v. Clark*, 765 F.2d 297 (2d Cir.1985). Therefore, defendants' motion to exclude this evidence is denied.

### MOTION TO EXCLUDE REFERENCE TO POST–RESIGNATION CONDUCT

 Defendant Dunn moves the court to exclude as to him all evidence of overt acts occurring after his resignation from the board of directors of Peoples Heritage. In support of this motion, defendant Dunn states that his resignation signalled his withdrawal from the charged conspiracy.

A defendant bears the burden of proving withdrawal from a conspiratorial agreement. *United States v. Record*, 873 F.2d 1363, 1369 (10th Cir.1989). Because defendant Dunn offers no explanation of how his resignation effectuated a withdrawal from the conspiracy, and because defendant

Dunn maintains that he was not involved in any conspiracy, he has not met his burden of proving withdrawal at this point in time. Therefore, subject to defendant Dunn admitting his involvement in the conspiracy and proving that he did, indeed, withdraw from the conspiratorial agreement on August 29, 1988, evidence of overt acts occurring after that date and in furtherance of the conspiracy will be admissible against him.

## OTHER EVIDENTIARY MOTIONS

Defendants have made several additional motions for pretrial evidentiary rulings.[5] It is the practice of this court not to make such determinations in advance of trial, as it is much more efficient and reasonable to make such determinations during the course of the trial, as the evidence unfolds. The court's tentative ruling at this time is to deny defendants' motions. Final rulings will be deferred until time of trial.

IT IS BY THE COURT THEREFORE ORDERED that the following motions are granted in part, as set forth in the preceding Memorandum and Order:

Defendant Blount's Motion Pursuant to Rule 611 of the Federal Rules of Evidence to Compel the Government to Specify the Order of its Witnesses (Doc. 156);

Defendant Blount's Motion under Rule 201 of the Federal Rules of Evidence for Advance Notice of any Matter which Either the Court or the Government May Contend is Appropriate for Judicial Notice (Doc. 147); and

Defendant Blount's Motion for Specification of Jury Selection Procedures (Doc. 144).

IT IS BY THE COURT FURTHER ORDERED that the following motions of defendants are denied:

Defendant Burger's Motion to Dismiss, or Alternatively, for Severance (Doc. 139);

Defendant Blount's Motion to Dismiss (Doc. 157);

Defendant Blount's Motion for Severance due to Misjoinder (Doc. 150);

Defendant Blount's Motion for Severance due to Prejudicial Joinder (Doc. 148);

Defendant Blount's Motion to Determine Admissibility of Extra Judicial Statements of Alleged Co–Conspirators and to Establish Order of Proof as to Conspiracy Allegations (Doc. 159);

Defendant Blount's Motion for Additional Strikes (Doc. 153);

Defendant Blount's Motion to Except Max M. Wayman from Exclusion Pursuant to Fed.R.Evid. 615(3) (Doc. 158);

Defendant Blount's Motion to Exclude Evidence of Civil Regulatory Violations (Doc. 154);

Defendant Blount's Motion for Early Release of Jury Information (Doc. 146);

Defendant Dunn's Motion to Dismiss Indictment for Grand Jury and Prosecutorial Abuse (Doc. 180);

Defendant Dunn's Motion to Dismiss for Government's Interference with Defendant's Access to Witnesses (Doc. 166);

Defendant Dunn's Motion to Dismiss— Double Jeopardy (Doc. 178);

Defendant Dunn's Motion to Dismiss Indictment or in the Alternative to Strike Surplusage (Doc. 168);

Defendant Dunn's Motion for Severance (Doc. 174);

Defendant Dunn's Motion for Individual *Voir Dire* (Doc. 170);

Defendant Dunn's Motion *in Limine* to Exclude Reference to Acts or Conduct of Defendant Dunn Allegedly Occurring after August 29, 1988 (Doc. 172);

Defendant James Cruce's Motion to Dismiss Count 1 of the Indictment for the Reason that it Violates the Fifth Amendment to the United States Constitution's Prohibition against Double Jeopardy (Doc. 188);

Defendant James Cruce's Motion to Dismiss Count 25 of the Indictment (Doc. 182);

---

**5.** Defendant Blount has again raised a motion for a pretrial determination of the admissibility of 801(d)(2)(E) evidence (Doc. 159). The court previously denied this motion in its Memorandum and Order issued March 12, 1991, 773 F.Supp. 1419.

**1442**

Defendant James Cruce's Motion to Dismiss the Indictment for the Reason that the Government has Charged Multiple Conspiracies in a Single Indictment (Doc. 190);

Defendant James Cruce's Motion to Dismiss for Failure of the Government to Present Exculpatory Evidence to the Grand Jury and for Grand Jury Abuse (Doc. 184);

Defendant James Cruce's Motion to Sever the Counts of the Indictment for Trial (Doc. 186);

Defendant Cathy Cruce's Motion for Severance (Doc 115);

Defendant Cathy Cruce's Motion to Dismiss Counts One Through Twenty–Five of the Indictment (Doc. 195);

Defendant Grosz's Motion for Severance (Doc. 143);

Defendant Grosz's Motion to Limit *Seriatim* Prosecutions (Doc. 142); and

Defendant Grosz's Motion to Dismiss Indictment (Doc. 141).

IT IS BY THE COURT FURTHER ORDERED that the following motions are provisionally denied, with final rulings deferred until trial:

Defendant Blount's Motion Pursuant to Federal Rules of Evidence 611(c) and 613 (Doc. 155);

Defendant Blount's Motion *in Limine* to Exclude Evidence of other Pending Actions (Doc. 162);

Defendant Blount's Second Motion *in Limine* to Exclude Evidence of Personal Life (Doc. 163);

Defendant Blount's Third Motion *in Limine* to Exclude Evidence of Subsequent Financial Conditions or Events (Doc. 164); and

Defendant Dunn's Motion *in Limine* to Exclude any Reference to the Alleged Amount of Loss Incurred by Peoples Heritage Savings & Loan, its Depositors, Holding Company or any Governmental Agency (Doc. 176).