972 F.2d 357
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
A. Leonard VARAH, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael W. STRAND and Galen Ross, Defendants-Appellants.
 Nos. 87-2320, 87-2354 and 87-2355.
 United States Court of Appeals, Tenth Circuit.
 July 30, 1992.
 
 Before TACHA, BALDOCK and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 EBEL, Circuit Judge.
 
 I. BACKGROUND
 
 1
 This case arises out of a scheme to defraud investors by knowingly misrepresenting the investment potential of certain gas, oil, and uranium properties and by misappropriating investors' funds. The appellants commenced this scheme in 1977. In 1986, the government filed an indictment charging the appellants with mail fraud, securities fraud, and conspiracy to commit mail fraud.
 
 
 2
 In order to salvage Classic Mining Corporation ("Classic"), Appellant Galen J. Ross (president of Classic) and Appellant Michael W. Strand (a significant shareholder) acquired a controlling interest in uranium claims located in Wyoming. Without obtaining evidence as to the value of such claims, Ross and Strand launched a promotion of Classic stock by sponsoring field trips for stockbrokers, sales seminars, and news articles. To assist them in their efforts to locate investors and to raise funds for uranium, oil, and gas exploration, they hired Appellant A. Leonard Varah as a stock promoter in 1978.
 
 
 3
 In addition to Classic, the appellants employed many corporate vehicles to further their financial endeavors. In particular, the appellants stimulated public investment by promoting several joint ventures in which the appellants or companies owned or controlled by the appellants played important roles. The record reveals that the appellants were less than forthcoming when they explained these ventures to their investors.
 
 
 4
 For example, Classic entered into a joint venture with Fulton Investment Corporation ("Fulton"), by which Classic agreed to sell ore to Fulton. Classic neglected to tell its shareholders that Varah was a controlling figure in Fulton and that Classic had far less ore than Fulton had agreed to buy. Not surprisingly, this agreement never came to fruition.
 
 
 5
 In addition, Classic entered into a joint venture known as Overland Dome Petroleum Company ("Overland") for the purpose of oil and gas exploration with Living Industries, Inc. ("Living"). Varah, who was president of Living, developed a program for the public sale of limited partnership interests in each well to be drilled.[1] Even though the cost to drill each well varied substantially, investors paid over $200,000 per well regardless of actual cost. The substantial profits derived from the difference between the amount invested and the actual cost were not passed back to or even reported to the investors.
 
 
 6
 Furthermore, the record reveals that the appellants used the mails and other means to distribute false and misleading information regarding the operations of Classic and Living. Specifically, the appellants circulated deceptive information regarding the extent and value of Classic's uranium reserves and contracts for the sale of such uranium, inflated production results from Classic's oil and gas wells, and falsified or concealed information about the scope and nature of their criminal background and financial interests in the enterprise.
 
 
 7
 As a result of the appellants' activities, the price of Classic and Living Stock rose dramatically and investors contributed 6.5 million dollars to limited partnerships. In addition, Strand and Varah realized hundreds of thousands of dollars in profit when they sold substantial amounts of their shares in the two companies.
 
 
 8
 The scheme went sour, however, in 1981. Suspicious investors, who had received no return on their investment, began to doubt the glowing reports they had been receiving and to demand actual production figures. Dissension arose between Classic and Living with respect to the oil and gas joint venture. Varah's relationship with Strand and Ross deteriorated such that communication between them ceased, particularly after Varah filed for Chapter 11 bankruptcy on behalf of Overland against the wishes of Strand and Ross. In the midst of this turmoil, the appellants attempted to placate the investors through several letters. It was too late.
 
 
 9
 On September 18, 1986, the appellants were indicted for their respective roles in the above activities. A jury trial took place in May 1987 in the United States District Court for the District of Wyoming. The jury found Varah, Strand, and Ross guilty of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. In addition, Varah was convicted of mail fraud in violation of 18 U.S.C. § 1341 and securities fraud in violation of 15 U.S.C. §§ 77q and 77x. Strand and Ross were convicted of mail fraud and aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2 & 1341.
 
 
 10
 Varah and Strand were each sentenced to a four-year-term of imprisonment for conspiracy. In addition, Varah received a consecutive three-year-term for mail fraud, and Strand received a consecutive three-year-term for aiding and abetting mail fraud. In addition, the court fined them $150,000, suspended imposition of sentence on the remaining counts, and placed them on probation for five years, to commence after completion of their terms of imprisonment. Ross was fined $10,000 and placed on a five-year-term of probation.
 
 
 11
 They now appeal their convictions on numerous grounds. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Because the evidence presented below overlapped, we will decide all three appeals in this single order and judgment. For the reasons detailed infra, we affirm the decision of the district court.
 
 II. DISCUSSION
 A. Varah
 
 12
 Varah raises three issues on appeal. First, he contends that the trial court erroneously instructed the jury that the defendant bears the burden of proving that he withdrew from the conspiracy, thereby violating his due process rights. Second, he alleges that his conviction for mail and securities fraud should be reversed because the mailings that formed the basis for his conviction were not in furtherance of the charged scheme. Third, he argues that he was denied reasonably effective assistance of counsel in violation of the Sixth Amendment. We reject these contentions for the following reasons.
 
 
 13
 First, the district court correctly instructed the jury that the defendant bears the burden of proving that he withdrew from a conspiracy. See R., Vol. V, Doc. 131, Instr. 45 ("Regarding possible withdrawal of a defendant from a conspiracy, you are instructed that once it is shown to your satisfaction that a defendant knowingly joined a conspiracy he is presumed in law to be a member of the conspiracy until it affirmatively appears from the evidence that the defendant in good faith disavowed and completely withdrew from any participation in the conspiracy. The burden of establishing an abandonment of or a withdrawal from a conspiracy lies with the defendant...."). Notwithstanding the government's concession to the contrary, see Brief of Appellee at 33, Tenth Circuit law clearly places the burden on the defendant. See United States v. Fox, 902 F.2d 1508, 1516 (10th Cir.), cert. denied, 111 S.Ct. 199 (1990); United States v. Record, 873 F.2d 1363, 1369 (10th Cir.1989); United States v. Cardall, 885 F.2d 656, 668 n. 22 (10th Cir.1989); United States v. Parnell, 581 F.2d 1374, 1384 (10th Cir.1978), cert. denied, 439 U.S. 1076 (1979); United States v. Burger, 773 F.Supp. 1430, 1440 (D.Kan.1991).
 
 
 14
 Varah's argument that the defendant bears only the burden of coming forward with evidence sufficient to place the defense in issue is without merit. Although most of the cases in this Circuit state that the defendant has the burden of "establishing" withdrawal rather than "proving" withdrawal, it is clear that "establishing" in this context encompasses the burden of persuasion. See Black's Law Dictionary 490 (5th ed. 1979) (equating "establish" with "put beyond doubt or dispute; prove; convince"); see also United States v. Hollis, 569 F.2d 199, 204 n. 6 (3d Cir.1977).
 
 
 15
 Second, Varah alleges that his conviction for mail and securities fraud should be reversed because the mailings that formed the basis for his conviction were not in furtherance of the charged scheme as required by 18 U.S.C. § 1341 and 15 U.S.C. § 77q respectively. See United States v. Mackay, 491 F.2d 616, 619 (10th Cir.1973) ("The offense of securities fraud is quite similar [to mail fraud] in that it also calls for proof of a scheme or design to defraud incident to the purchase or sale of a security. Here again, there must be the use of an instrumentality of interstate commerce or of the mails in furtherance of that scheme or design."), cert. denied, 416 U.S. 972 (1974); United States v. Lynn, 461 F.2d 759, 762-63 (10th Cir.1972) ("Utilization of the mails after [a] scheme has been fully consummated and completed in all of its parts cannot supply the essential ingredients for [mail fraud].... The federal mail fraud statute does not purport to reach all frauds, but only those instances in which the use of the mails is a part of the execution of the fraudulent scheme.").
 
 
 16
 Varah alleges that the scheme terminated when he withdrew from the conspiracy or, alternatively, that the mailings upon which the government relies were not "lulling letters" written in furtherance of an existing scheme. We reject these contentions. Viewed in the light most favorable to the government, the record supports the jury's decision that Varah did not satisfy his burden of proving that he withdrew from the conspiracy. Similarly, a reasonable jury could have concluded that the mailings in dispute constitute lulling letters.
 
 
 17
 A lulling letter is a mailing that is "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place." United States v. Maze, 414 U.S. 395, 403 (1974); see also S.E.C. v. Holschuh, 694 F.2d 130, 144 n. 24 (7th Cir.1982) (For mail fraud and securities fraud, " '[a] scheme to defraud may well include later efforts to avoid detection of the fraud ... Avoidance of detection and prevention of recovery of the money lost by the victims are within, and often a material part of, the illegal scheme. Further profit from the scheme to defraud, as such, may be over, and yet the scheme itself may not be ended.' ") (citation omitted).
 
 
 18
 Due to the five-year statute of limitations applicable pursuant to 18 U.S.C. § 3282, only three mailings are in dispute. First, on April 6, 1982, Ross sent a letter to the shareholders of Classic. See Ex. 39.[2] This letter painted an optimistic picture of Classic's future and failed to mention any of the problems that plagued Classic at that time. It appraised the shareholders of the "progress being made by Classic" and announced the drilling of a new deep well and of existing wells in conjunction with Mingo Oil Company ("Mingo"), without disclosing that Strand was a principal of Mingo. Second, on July 16, 1982, Varah sent a letter to the limited partners of Overland. This letter announced that disgruntled investors had filed a class action against Ross and Strand and implicitly exonerated Varah. See Ex. 41. Third, Varah sent another letter to the limited partners of Overland on January 19, 1983, after Varah had been added as a defendant in the class action, assuring them that Living was protecting the rights of all investors and urging them, successfully, not to provide financial support for the suit. See Ex. 323.
 
 
 19
 Varah correctly points out that some courts have concluded that mailings that have the effect of alerting the recipient to a fraudulent scheme are not lulling letters. Appellant's Brief at 33-37. In many of these cases, however, the letters could not reasonably be interpreted as an attempt to lull the recipients into inaction. See, e.g., United States v. Castile, 795 F.2d 1273, 1279-80 (6th Cir.1986); Gordon v. United States, 358 F.2d 112, 115 (5th Cir.1966). Here, the mailings in dispute contain statements that could reasonably be construed as an attempt to lull the investors into a false sense of security and thereby to postpone investigation into the appellants' scheme. Accordingly, we refuse to set aside the jury's verdict on this ground.
 
 
 20
 Finally, Varah argues that he was denied reasonably effective assistance of counsel as guaranteed by the Sixth Amendment.[3] In evaluating this claim, we bear in mind that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. 668, 690 (1984). We conclude that Varah has failed to show that "there is a reasonable probability that, but for counsel's ... errors, the result of the proceeding would have been different," as required by Strickland. Id. at 694.
 
 B. Strand and Ross
 
 21
 Strand and Ross raise five issues on appeal. First, they contend that the district court erred in allowing the trial to proceed when the government had failed to respond to their request for a bill of particulars. Second, they argue that their convictions are barred by the five-year federal statute of limitations, 18 U.S.C. § 3282. Third, they allege that the court erred in allowing the introduction of Strand's prior convictions. Fourth, they contend that the district court erred in refusing to allow them a bench trial rather than a jury trial. Finally, they argue that the evidence does not support the jury verdict. We reject these contentions.
 
 
 22
 First, we cannot conclude that the district court erred in allowing the trial to proceed despite the government's failure to provide a formal bill of particulars to Strand and Ross. Strand and Ross did not follow the district court's instructions to prepare an order granting their motion for a bill of particulars. R., Vol. 7, at 14. "A court of records has been deemed to speak only through its records, and thus '[a]s a general rule, an order granted on a motion should, in order to become complete and effective, be entered, filed, or made a part of the minutes or record of the court.' " United States v. Martinez, 749 F.2d 623, 625 (11th Cir.1984) (citations omitted). Even if such an order were unnecessary, the government substantially fulfilled its obligation by submitting the information sought in an alternative form.[4]
 
 
 23
 Second, we reject the argument that Strand's and Ross' convictions are barred by the five-year federal statute of limitations, 18 U.S.C. § 3282, for the same reasons stated during our discussion of Varah's claim that the mailings that formed the basis for his conviction were not in furtherance of the charged scheme.
 
 
 24
 Third, the court did not abuse its discretion when it allowed the government to introduce evidence regarding Strand's 1978 convictions for willfully failing to report income for federal tax purposes and for securities fraud. This evidence was highly probative as to the government's allegations that the appellants participated in a fraudulent scheme or conspiracy. In particular, it was relevant to the appellants' alleged agreement to conceal Strand's conviction from investors and business associates. Furthermore, the district court gave the jury appropriate limiting instructions at the time the evidence was admitted so as to minimize the potential for unfair prejudice.
 
 
 25
 Fourth, the argument that Strand and Ross were denied due process because the district court would not permit them to waive their right to a jury trial without the consent of the prosecution was expressly rejected in Singer v. United States, 380 U.S. 24, 36 (1965).
 
 
 26
 Finally, the record supports the jury verdict. In evaluating a claim of insufficient evidence, we must view all of the evidence in the light most favorable to the government and all reasonable inferences and credibility choices must be made in support of the jury's verdict. United States v. Richard, Nos. 91-6140, 91-6142, 91-6143, 91-6146, 1992 U.S.App. LEXIS 14448, at * 16 (10th Cir.1992). "Further, while the evidence supporting the conviction must be 'substantial' and 'do more than raise a mere suspicion of guilt,' it 'need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt.' Overall, we must determine whether any reasonable jury could find the defendants guilty beyond a reasonable doubt." Id. at *16-17 (citations omitted). Applying the above standard, we conclude that the government presented sufficient evidence such that a reasonable jury could find the appellants guilty beyond a reasonable doubt.
 
 
 27
 For the foregoing reasons, we AFFIRM the decision of the district court.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 In addition, Varah offered and sold interests in limited partnerships to finance the construction of a pipeline to the various gas wells
 
 
 [2]
 The scheme had clearly not yet terminated as of this date, as the appellants contend, because Strand solicited funds from one of the limited partners in May 1982
 
 
 [3]
 In support of this argument, Varah moves for reconsideration of his earlier motion to expand the appellate record to include the affidavit of his trial counsel. We DENY this motion because that affidavit was not part of the record below. We also DENY the motion to stay the appeal
 
 
 [4]
 Strand and Ross contend that the information provided by the government was insufficient because it did not accurately disclose the government's theory of the case. Brief of Appellant at 19-22, 24-25. However, "[a] bill of particulars may not be used to compel the Government to disclose evidentiary details or 'to explain the legal theories upon which it intends to rely at trial.' " United States v. Gabriel, 715 F.2d 1447, 1449 (10th Cir.1983) (citation omitted). Rather, it is designed to allow the defendant to prepare a defense, to avoid prejudicial surprise at trial, and to bar the risk of double jeopardy. See United States v. Barbieri, 614 F.2d 715, 719 (10th Cir.1980)